Argued October 3, 1977, affirmed February 8, 1978

# DEAN VINCENT, INC., *Appellant,*
*v.*
# McDONOUGH et al, *Respondents.*
## (TC 31520, SC 24659)
574 P2d 1096

Gregg C. Sayre, Portland, argued the cause for appellant. With him on the briefs were Marvin S. W. Swire, and Rosenberg, Swire & Riebe, Portland.

Willard L. Cushing, McMinnville, argued the cause for respondents. With him on the brief were Robert M. Johnstone, and Cushing, Johnstone & Peterson, Mc-Minnville.

TONGUE, J.

Lent, J., specially concurring.

**TONGUE, J.**

This is an action by a real estate broker for damages for breach of a listing agreement by the owners of business property near McMinnville who withdrew plaintiff's authority to sell that property, in violation of the terms of that agreement. The case was tried before a jury, which returned a verdict in favor of plaintiff in the sum of $250. Plaintiff appeals from the resulting judgment. We affirm.

Plaintiff's complaint was in two counts: one seeking to recover $17,500 as liquidated damages under the terms of the listing agreement; the other seeking to recover $17,500 as the actual damages suffered by plaintiff as the result of the breach of that agreement. Defendants' answer admitted the signing of a "purported" listing agreement and pleaded various affirmative defenses which are not in issue on this appeal. Defendants did not, however, plead as an affirmative defense that the contract provision for liquidated damages was invalid for failure to satisfy the established requirements (a) that "the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach" and (b) that "the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation."[1]

Plaintiff's sole assignment of error is that the trial court erred in denying a directed verdict for $17,500 as the amount of liquidated damages stipulated in the contract because the defendants did not plead the invalidity of the liquidated damage clause.

*The facts and the record.*

The listing agreement in this case is on a printed form prepared by plaintiff. The top "half" of that form

---

[1] *See* Restatement of Contracts § 339 (1932), as adopted in *Harty v. Bye,* 258 Or 398, 407, 483 P2d 458 (1971). *See also Medak v. Hekimian,* 241 Or 38, 44, 404 P2d 203 (1965); *Wright v. Schutt Construction,* 262 Or 619, 623, 500 P2d 1045 (1972); *Babler Bros., Inc. v. Hebener,* 267 Or 414, 419, 517 P2d 653 (1973); *Shaw v. Northwest Truck Repair,* 273 Or 452, 541 P2d 1277 (1975); and *Layton Manufacturing v. Dulien Steel,* 277 Or 343, 347, 560 P2d 1058 (1977).

consists of a series of blank spaces, which were filled in with such information as the "business name" and address, the "price" and "terms," the property included, and the year's "gross business" and "net profit." Then follows a provision granting to plaintiff "the sole and exclusive right to sell" for a stated period and an agreement by the owner to "accept a price" as stated (here $175,000) and to pay to plaintiff "a fee" in the amount stated (here $17,500).

Several paragraphs in small print then follow, including the following:

> "In the event said property is sold, leased or exchanged during the period of this contract, or Dean Vincent Inc. procures a purchaser ready, able and willing to purchase at the terms above specified, or places the Owner in touch with a purchaser to whom at any time within 180 days from the termination of the exclusive character of this contract the Owner sells or conveys the said property, or if the Owner during the period of this contract withdraws the authority hereby given, the Owner shall pay to Dean Vincent Inc. the same fee as hereinabove specified. * * *"

This listing agreement was signed by defendants and by Anthony J. Maksym, on behalf of plaintiff, and was dated August 20, 1974.

Mr. Maksym testified that he "read the entire document" to defendants; that "we read it together" and discussed "each line carefully," including the "fee of $17,500" and that "they readily agreed to pay the fee."

Defendant McDonough testified, however, as follows:

> "Q * * * was the entire agreement read to you by Mr. Maksym?
> "A Absolutely not.
> "Q Did you read in great detail the lower half of the form, the printed portion?
> "A I didn't read any of it.

[ 242 ]

"Q You just said you read some of it?

"A I'm talking about the fine print on the bottom, I did not read that.

"Q You read up above that?

"A Yes. That was filled in.

"* * * * *

"Q * * * Did you read all the matters that he wrote into the listing agreement?

"A I read the things that he put in there, yes."

Defendant Amundson also testified that Mr. Maksym did not read the listing agreement to him, but gave it to him to read and that he "scanned over it" and "read the matters that he printed into the listing."

Defendant McDonough also testified that the next day, August 21, 1974, he called Mr. Maksym and told him that "we did not want to sell" and "wanted to cancel the listing"; and that when some two weeks later Mr. Maksym nevertheless brought the first of two prospective purchasers to look at the property he again told Mr. Maksym that "we did not want to sell"; and that he never received any offer from anyone brought by plaintiff.

To the same effect, defendant Amundson testifed that the day after Mr. McDonough called Mr. Maksym, and two days after the date of the listing agreement, he also called Mr. Maksym and told him that they "were not going to sell it"; that at that time he offered to reimburse Mr. Maksym for any out-of-pocket expenses incurred by him to "compensate him for his trouble"; that Mr. Maksym "just ignored it" and that he asked Mr. Maksym "if he had spent any money on it, he said 'no,' not at that time, only two days later." Mr. Amundson also testified that Mr. Maksym about two weeks later brought down a prospective purchaser, but that he did not receive any offer from him.

Mr. Maksym denied most of the foregoing testimony and testified that it was not until September 23, 1974, that he received the "first notice" that defendants did not want to sell the business. He also

testified that prior to that time he had run advertisements in the Oregonian, beginning August 30, 1974, and had brought two prospective purchasers to look at the business and that he did not receive an offer or earnest money from anyone. Plaintiff offered no evidence to show the amount of the actual out-of-pocket or other loss or damage incurred by it, in support of Count II of its complaint, other than the testimony of one of its vice presidents that, in his opinion, a purchaser could have been found within 90 days who would have paid $175,000 for the business, based upon his experience and the fact that a new shopping center was "going in across the street."

In February 1976 (18 months after the date of the listing agreement) defendants sold the business, a "Shakey's Pizza" parlor, to another purchaser for $175,000. At that time a shopping center had been completed across the street, apparently including Safeway, Sprouse-Reitz, and Payless. Defendant Amundson testified that at the time of the listing the "land was being prepared" for the shopping center and there were "a lot of rumors," but he didn't know at that time "what stores were going in."

At the conclusion of the foregoing testimony plaintiff moved for a directed verdict upon the ground that the execution of the listing agreement was admitted; that "with reference to the liquidated damages count" there was "no pleading by the defendants contending the invalidity of their provision"; that it was admitted that defendants "withdrew their authorization"; and that it followed, as a matter of law, that plaintiff was entitled to judgment for $17,500 as liquidated damages.

That motion was allowed in part. The trial judge ruled that the contract had been breached and that he was going to direct a verdict for the plaintiff and submit to the jury "only the question of damages," saying that:

[ 244 ]

"* * * [T]here are two issues of damage. The first being a question of liquidated damages, and the second being a question of general damages. *I see it as a jury issue as whether or not the parties believed at the time of coming to agreement the amount of commission to be a reasonable forecast of the loss to be suffered by the plaintiff if there is a breach.* That seems to me to be a jury issue. With appropriate instruction, I'll submit that to the jury. In the event they do not so find, then it is appropriate to instruct them to find actual damages or general damages as of the time of the breach." (Emphasis added)

The trial court then instructed the jury to return a verdict of $17,500 for the plaintiff

"* * * if you find that two conditions existed. One, that at the time the contract was made, the amount of harm which plaintiff would suffer in the event of a breach would be incapable of or very difficult of accurate estimation at the time the agreement was drafted; and, two, *that the sum of $17,500 was agreed upon by the parties as a reasonable forecast of the loss which would be suffered by plaintiff in the event of a breach by the defendants.* If those two conditions exist, then you are to award damages in that sum to the plaintiff as set forth in the agreement. If either of those two conditions do not exist, then under Count II of the Complaint you are to award to the plaintiff a sum which will compensate plaintiff for general damages that it actually suffered as a result of defendant's breach, but that sum cannot exceed $17,500. * * *" (Emphasis added)

Plaintiff took an exception to that instruction, but does not on this appeal assign as error the giving of that instruction.

After considering the foregoing evidence under these instructions by the trial judge, the jury returned a verdict in favor of plaintiff in the sum of $250. The court also allowed $2,000 to plaintiff as attorney fees.

*The sufficiency of the evidence to support the verdict.*

■ In our opinion, the jury could have properly found from the testimony of the two defendants relating to the circumstances surrounding the negotiation and

[ 245 ]

execution of the contract that the amount of $17,500 was not a "reasonable forecast of just compensation" for the loss which would be suffered by plaintiff in the event of a breach by defendants because there was no "genuine pre-estimate of injury," a requirement recognized by this court in *Wright v. Schutt Construction,* 262 Or 619, 500 P2d 1045 (1972), citing 5 Corbin on Contracts 345-46, § 1059 (1964), in that from that evidence it appeared that there was no "honest and good faith effort to arrive at such an estimate." The jury could properly infer this even from the testimony of Mr. Maksym that he and defendants did no more than read and "discuss" the printed provisions, including the provision for liquidated damages, in the printed form previously prepared by plaintiff. The testimony of defendants that these provisions were not even read, much less discussed, further supports such a finding.

The jury could also, in our opinion, properly find from the testimony of defendants that the listing was withdrawn the very next day; that this was done before any substantial effort or expenses were incurred by plaintiff and that, as a result, the payment to plaintiff of the sum of $17,500 would have been "grossly disproportionate" or "without reasonable relation" to plaintiff's *actual damage,* found by the jury to be $250.[2] This court has held that evidence that the liquidated damages would be "grossly disproportionate" to the actual damages may also show that the parties did not make the required bona fide effort to arrive at a "reasonable forecast" or "pre-estimate" of the expected damage or loss.[3]

---

[2]The jury was not required to believe the testimony of plaintiff's vice president that, in his opinion, a purchaser would have been found within 90 days who would have paid $175,000 for the business, so as to entitle plaintiff to a commission of $17,500.

[3]*See Wright v. Schutt Construction,* 262 Or 619, 625, 500 P2d 1045 (1972). *See also* 5 Corbin on Contracts 347, 364-67, §§ 1059, 1063 (1964); Restatement of Contracts § 339, Comment *c* (1932), and concurring opinion in *Layton Manufacturing v. Dulien Steel,* 277 Or 344, 353-56, 560 P2d 1058 (1977), and authorities cited therein.

For these reasons, it is our opinion that there was ample evidence to support the finding by the jury, under instructions from the trial court not in issue on this appeal, that the liquidated damage provision of this contract was invalid because it did not satisfy the requirements established by this court. It follows that even if defendants should have had the burden of proof to establish that this contract provision for liquidated damages did not satisfy the established requirements for the validity of such provision, there was ample evidence to support such a finding by the jury.

### The burden of pleading and proof.

As previously noted, plaintiff's sole assignment of error is that the trial court erred in denying its motion for a directed verdict on Count I of its complaint for the reason that plaintiff did not plead the invalidity of the liquidated damage clause. In other words, plaintiff does not deny that there was sufficient evidence to support that finding by the jury, but contends that it is entitled to judgment for $17,500 because defendants did not plead that defense.

In support of that contention plaintiff says that the weight of authority in the United States is to the effect that the defendant has the burden of not only proving, but also pleading, that a liquidated damage clause is invalid as a penalty, citing cases from other states. In addition, plaintiff cites our decision in *Wright v. Schutt Construction Co.,* 262 Or 619, 629, 500 P2d 1045 (1972), as holding that this question is "open for decision" in Oregon and also cites our decision in *Chaffin v. Ramsey,* 276 Or 429, 435-36, 555 P2d 459 (1976), as "indicating that *in future cases* it might recognize a more liberal rule in favor of liquidated damages."

The difficulty with plaintiff's position is that although there may be merit in its contention that "in future cases" (i.e., cases decided after *Chaffin*) this court should adopt the view that the defendant has such a burden of pleading and proof, it would appear

that the law of Oregon at the time this case was tried was to the effect that the burden was upon the *plaintiff* to prove that a liquidated damage clause in a contract was not invalid as a penalty. It is apparent that both defendants' attorney and the trial judge in this case proceeded upon that understanding.

If defendants were correct in that understanding and had no good reason to believe at the time of the trial of this case that this court was considering a change in the "rules of the game," so as to impose upon *defendants* the contrary burden of pleading and proof, we believe that defendants should not be penalized by a subsequent change in that rule.

Prior to the decision of this court in *Wright* it had been held in a series of cases that the burden is upon the plaintiff to prove that a contract provision for liquidated damages is not invalid as a penalty.[4]

In *Wright,* however, we said (at 629) that:

"* * * Because such evidence was offered by plaintiff we need not decide in this case whether, in the usual case, the plaintiff may have the burden to offer evidence to sustain such a payment as one of liquidated damages, rather than as a penalty, or whether the defendant may have the contrary burden."

We do not believe, however, that this was a sufficient "red flag" so as to warn trial lawyers and trial judges that this court was about to change the rules of pleading and proof of liquidated damages. Indeed, in the next two cases decided after *Wright* involving liquidated damages this court did not change that rule, but continued to impose that burden upon the plaintiff.[5]

---

[4] *Salem v. Anson,* 40 Or 339, 345, 67 P 190 (1902); *Hull v. Angus,* 60 Or 95, 105, 118 P 284 (1911); *Alvord v. Banfield,* 85 Or 49, 58, 166 P 549 (1917); *Learned v. Holbrook,* 87 Or 576, 585, 170 P 530, 171 P 222 (1918); *Secord v. Portland Shopping News et al.,* 126 Or 218, 224, 269 P 228 (1928).

[5] *See Chaffin v. Ramsey,* 276 Or 429, 435, 555 P2d 459 (1976), citing *Babler Bros., Inc. v. Hebener,* 267 Or 414, 419-20, 517 P2d 653 (1973), and *Shaw v. Northwest Truck Repair,* 273 Or 452, 541 P2d 1277 (1975), among other Oregon cases, as holding that "[i]n Oregon the burden has been placed upon the plaintiff."

*Chaffin* was not decided until *after* the trial of this case and in *Chaffin* it was expressly recognized that such was the law of Oregon as of that date in an opinion which refused to "repudiate" that rule. Indeed, it was not until *Chaffin* that it was suggested (at 429) that in *Wright* this question "is treated as still open for decision." And it was not until our decision in *Layton Manufacturing v. Dulien Steel,* 277 Or 343, 560 P2d 1058 (1977), that this court said (at 348-49) that:

> "We recently recognized in *Chaffin v. Ramsey, supra* [276 Or 429, 555 P2d 459 (1976)] that the better rule may be to assign the burden of proof to the defendant in cases where defendant resists the enforcement of an agreed damages provision. In *Chaffin,* it was unnecessary to adopt such a rule due to the evidentiary posture of that case."

■ Although this court is not unanimous in its views upon this subject,[6] it is now the opinion of the majority of its members that this court should adopt what was referred to in *Chaffin* (at 436) as the "modern view" to the effect that parties who negotiate the terms of a contract may properly include a provision for liquidated damages and that, in the absence of proof of oppression or "adhesive" circumstances, the defendant should have the burden to both plead and prove that such a contract provision is invalid for failure to satisfy the two requirements of the rule as stated in Restatement of Contracts § 339, *supra,* and as previously adopted by this court.[7]

■ As previously stated, however, and as also recognized in *Chaffin* (at 435), the rule on this subject in Oregon at the time of that decision, and at the time of

---

[6] *See* dissenting opinion in *Chaffin v. Ramsey,* 276 Or 429, 436, 555 P2d 459 (1976), and concurring opinion in *Layton Manufacturing v. Dulien Steel,* 277 Or 343, 350, 560 P2d 1058 (1977).

[7] The concurring opinion contends that defendant should also have the burden of proof on the issue of "oppression or 'adhesive' circumstances" and that this court should discard the concept that the question "whether a contractual provision is designed to operate as a penalty is a question 'of law' for decision of the court." We do not necessarily disagree with these contentions. Because, however, no such contentions were made in this case we do not believe that this is an appropriate case to decide these questions.

[ 249 ]

the trial of this case, was that the burden of proof was upon the *plaintiff* to plead and prove that a contract provision for liquidated damages was *not* invalid for failure to satisfy those requirements. As also previously noted, even if the burden be placed upon the defendants in this case there was ample evidence to sustain such a burden of proof. Under these circumstances, we believe that it would be unfair to the defendants to reverse the verdict of the jury and the judgment of the trial court and to order that judgment be entered in favor of plaintiff for $17,500 in liquidated damages solely because defendants did not plead as an affirmative defense the invalidity of the contract provision for liquidated damages.

Although not directly in point, this is also in accord with the holding in *Chaffin* in which substantially the converse situation was presented and it was held (at 436) that even though the plaintiff in that case had the burden to prove that the contract provision for liquidated damages in that case satisfied the Restatement requirements for its validity, in accordance with the established rule in Oregon at that time, the evidence in that case clearly established that such requirements were satisfied, so as to require the entry of judgment in favor of plaintiff in that amount and the reversal of findings and judgment by the trial court to the contrary.

Despite the fact that this case was tried prior to our decisions in *Chaffin* and *Layton,* it may be that plaintiff would be entitled to a new trial if it had sought a new trial based upon error not only in the denial of its motion for a directed verdict, but also in instructions to the jury. It would appear, however, that plaintiff has made a deliberate choice not to seek a new trial, perhaps for the reason that the jury might well return the same verdict under the same evidence, even though the invalidity of the liquidated damage clause was pleaded as an affirmative defense and even though it was instructed that the burden was upon the defendants to establish such a defense.

Instead, plaintiff has taken an "all or nothing" position by limiting its appeal to the contention that it was entitled to a directed verdict for the full amount of the liquidated damages in the sum of $17,500, despite the fact that there was evidence sufficient to support the finding of the jury that the contract provision for liquidated damages was invalid and based solely upon the contention that defendants failed to affirmatively plead such defense, which defendants were not required to do at the time of the trial of this case.

For the reasons previously stated, we reject that contention and affirm the judgment of the trial court.

**LENT, J.,** specially concurring.

I concur in the result; furthermore, I concur in the observation that a majority of the members of the court now believe that the defendant should have the burden to plead and prove the invalidity of an agreement made in advance of breach fixing the damages for breach.[1]

The trial judge instructed the jury that plaintiff had the burden of proof to establish the amount of damages.[2] The trial judge then charged the jury that it could award the $17,500 specified in the contract only if the jury found both elements described in Restatement of Contracts § 339(1) (1932):

"(1) An agreement, made in advance of breach, fixing the damages therefor, is not enforceable as a

---

[1]The opinion of the court observes that a majority of the court now believes the court should adopt the " 'modern view' to the effect that parties who negotiate the terms of a contract may properly include a provision for liquidated damages and that, in the absence of proof of oppression or 'adhesive' circumstances, the defendant should have the burden to both plead and prove that such a contract provision is invalid for failure to satisfy the two requirements of the rule as stated in Restatement of Contracts § 339, *supra* [Comment c (1932)], and as previously adopted by the court." I quote the exact language because, among other things, I believe the defendant should have the burden both to plead and to prove invalidity for oppression, adhesion or unconscionability as well as invalidity as a penalty.

[2]That, of course, is erroneous under the holding of this case.

contract and does not affect the damages recoverable for the breach, unless

> "(a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and
>
> "(b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation."

We used somewhat different language to describe these two elements in *Layton Manufacturing v. Dulien Steel,* 277 Or 343, 346-47, 560 P2d 1058 (1977):

> "A contract provision which presets the amount to be paid to a damaged party will not be construed as an enforceable provision for liquidated damages unless (1) the actual damages resulting from a breach are difficult or impossible to ascertain, and (2) the damages agreed upon had a reasonable relationship to probable losses. *Medak v. Hekimian, supra* [241 Or 38, 404 P2d 203 (1965)]; *Secord v. Portland Shopping News, supra* [126 Or 218, 269 P228 (1928)]; Restatement of Contracts, § 339."

This language, although purporting to rely upon the Restatement actually shifts the focus slightly from estimation of the "harm" in § 339 (1) (b) to estimation of the monetary amount necessary to compensate for the harm and from "reasonable forecast" in § 339 (1) (a) to "reasonable relationship" between the agreed amount and probable losses. I submit that the language from *Layton Manufacturing* comes closer to describing how we actually apply the test for validity of the contractual provision because of the description of that process in my concurring opinion in *Layton Manufacturing.* I would, therefore, advocate the use of that language rather than that of § 339 (1) in charging the jury.

One other matter deserves attention with respect to our decision today. Both in *Medak v. Hekimian,* 241 Or 38, 404 P2d 203 (1965), and in *Layton Manufacturing v. Dulien Steel, supra,* we stated that whether the contractual provision is designed to operate as a penalty is a question "of law" for decision of the court.

If that were actually true, we should have no need to concern ourselves with assignment of the burden of proof (risk of non-persuasion of the trier of fact). The statement is true only in the sense that the judge tells the jury the legal effect of the establishment (or want thereof) of the two *factual* elements whether as described in Restatement of Contracts § 339 (1) or in *Layton Manufacturing v. Dulien Steel, supra,* as did the trial judge in this case. I believe, therefore, the court should discard the concept that we are dealing with a question of law rather than of fact.

I would conclude by again commending to the court adoption of the procedure for trying this kind of case described in my concurring opinion in *Layton Manufacturing.* That procedure denies to the injured party the benefit of the contractually fixed amount of damages only when the party at fault convinces the trier of fact that the damages actually sustained are less than the amount fixed by the contract. Where the party at fault is successful in that endeavor, the injured party is made whole, which I conceive to be the aim of the law. Where the endeavor is unsuccessful, I submit the situation will be one in which the contract would be enforced under our present approach. Following the procedure I advocate would give full credit to the freedom of the parties to contract while limiting the injured party to his actual damages where they are capable of ascertainment. For the reasons supporting this approach, see my concurring opinion in *Layton Manufacturing v. Dulien Steel, supra.*