Argued and submitted December 11, 1981, affirmed in part, reversed in part and remanded December 29, 1982, reconsideration denied February 17, petition for review allowed March 22, 1983 (294 Or 613)
See 297 Or 675 688 P2d 379 (1984)

# ILLINGWORTH,
*Respondent - Cross-Appellant,*

*v.*

# BUSHONG et al,
*Appellants - Cross-Respondents.*

## (No. 80-108-L, CA A20104)

656 P2d 370

Walter L. Cauble, Grants Pass, argued the cause for appellants - cross-respondents. With him on the briefs was Schultz, Salisbury & Cauble, Grants Pass.

Patrick G. Huycke, Medford, argued the cause and filed the brief for respondent - cross-appellant.

Before Gillette, Presiding Judge, Joseph, Chief Judge,* and Young, Judge.

GILLETTE, P. J.

* Joseph, C. J., *vice* Roberts, J.

## GILLETTE, P. J.

Plaintiff brought this action to recover his earnest money deposit, which defendants had retained after plaintiff had defaulted on a contract to purchase their ranch. Plaintiff contends that the liquidated damages provision is unenforceable as a penalty. The trial court agreed and awarded plaintiff judgment for the amount of his deposit ($50,000), less defendants' actual damages of $6,500. Defendants appeal the court's ruling that the liquidated damages clause is invalid. Plaintiff cross-appeals, contending that the court erred in failing to award him attorney fees and in setting the rate of interest on his judgment. We affirm the trial court's ruling as to the penal nature of the forfeiture, but we reverse and remand on the attorney fees and rate of interest matters.

Defendants were, at the time of this dispute, co-owners of a 373-acre ranch in Josephine County, which they listed for sale in July, 1978. Plaintiff viewed the property in August and, on September 8, entered into an earnest money contract to purchase the ranch for $490,000. The agreement contained a forfeiture clause, providing that if the purchaser failed to go through with the sale, he would forfeit his earnest money deposit.[1] The amount of the deposit was $50,000; the closing date was December 12, 1978. Plaintiff understood, however, that the deposit would not be forfeited on his breach if there were "back-up buyers" willing and able to purchase the ranch. Subsequent to the signing of the earnest money contract, two back-up buyers submitted offers to purchase the ranch, but both withdrew their offers before the scheduled closing date.

On the scheduled closing date, December 12, plaintiff failed to perform, because he did not have sufficient funds to close the transaction. On December 13, one of the former back-up buyers presented a new earnest money contract for purchase of the ranch to defendants' real estate agent. On January 25, 1979, that sale was closed for the

---

[1] We note in passing that the earnest money agreement under consideration here does, in fact, obligate the buyer to purchase the property. It is thus unlike some forms now in use that provide that the buyer is under no obligation to buy but simply loses his earnest money if he does not complete the transaction and the seller is prepared to do so. When there is no obligation to purchase, the agreement is an option. *See Aldrich v. Forbes,* 237 Or 559, 385 P2d 618, 391 P2d 748 (1964).

same total price plaintiff had offered, but with a higher down payment.

This action, which plaintiff brought after defendants had refused his demand for the return of the deposit, was tried to the court. After determining that the forfeiture clause was invalid, the court found that defendants had incurred $6,500 in actual damages as a result of plaintiff's breach and therefore awarded plaintiff judgment of $43,500, setting interest at 6 percent from May 29, 1979, the date of demand. The court declined to award attorney fees.

 A contract provision for liquidated damages is valid if it is designed to provide just compensation for the injured party in the event of a breach; if it goes beyond just compensation, however, it is unenforceable as a penalty. *Wright v. Schutt Construction,* 262 Or 619, 623, 500 P2d 1045 (1972). The test is whether:

> " '(a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and
>
> '(b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation.' " 262 Or at 623, quoting Restatement of Contracts § 339(1) (1932).

To satisfy the first requirement, there must be a genuine pre-estimate of the injury; that is, the parties must make an honest and good faith effort to arrive at an accurate estimate. *Dean Vincent, Inc. v. McDonough,* 281 Or 239, 246, 574 P2d 1096 (1978). A showing that the liquidated damages are "grossly disproportionate" to actual damages is evidence that the estimate was not reasonable. 281 Or at 246. The burden of proof, however, is on the party who seeks to avoid the clause. 281 Or at 249. The question is for the trier of fact, unless reasonable minds could not disagree as to the facts and the conclusions to be drawn from them. *Foster v. Peterson,* 42 Or App 249, 258, 600 P2d 490 (1979).

 Here, the trial court specifically found that there was not a genuine pre-estimate of the damage that defendants would suffer should plaintiff fail to perform; rather, the amount of damages was selected on the basis of a rule of thumb that an earnest money deposit should represent

10 percent of the purchase price. There was substantial evidence in the record to support this determination, including defendants' inabililty, at deposition before trial, to state the amount of their monthly expenses in operating the ranch and the fact that their actual damages were, as the evidence showed, grossly disproportionate to the proposed liquidated damages.[2] The trial court did not err in refusing to enforce the liquidated damages clause.[3]

---

[2] *Chaffin v. Ramsey*, 276 Or 429, 555 P2d 459 (1976), relied on by appellant, is reasonably close on its facts but, in our view, not dispositive, because this case is an action at law and the facts in evidence would permit a rational trier of fact to find as this trial court did.

[3] Another consideration, not argued by the parties, also suggests the result we reach in this case.

The agreement here not only provides for liquidated damages, but also gives the sellers the alternative right, at their choice, to maintain an action against the buyer for their *actual* damages. Given that provision, we could hold that the attempt to provide for liquidated damages is ineffective, regardless of whether $50,000 was a reasonable forecast of damages that would result from the buyer's breach and whether those damages were not readily ascertainable. The theory underlying liquidated damage provisions is that if the parties fix an amount meeting those two criteria, then the breaching party is liable in the amount so fixed, regardless of what the actual damages are. That is, even if the sellers' damages here greatly exceeded the $50,000, the most that the sellers could recover from the buyer would be $50,000.

The agreement does not so limit the sellers; it is therefore arguable that the provision in question is not, on its face a valid provision for liquidated damages. To uphold it would be tantamount to permitting the sellers to take the liquidated damages if their actual damages are less than the stipulated amount, or to sue for their actual damages if they are greater than the stipulated amount. That choice subverts the purpose of liquidated damages.

Although we are aware of no Oregon decision on the question, courts in other jurisdictions have held that such contract provisions are not valid with respect to liquidated damages. *See Caesar v. Rubinson*, 174 NY 492, 67 NE 58 (1903); *Elzy v. Waterloo, C.F. & N.Y. RY CO.*, 193 Iowa 330, 183 NW 378, 184 NW 745 (1921); *Jarro Building Industry Corp. v. Schwartz*, 54 Misc 2d 13, 281 NYS2d 420 (App Term 1976); *Dalston Constr. Corp. v. Wallace*, 26 Misc 2d 698, 214 NYS2d 191 (Dist Ct 1960). In *Dalston*, the court said:

"* * * The underlying purpose [of a liquidated damage clause] is to permit parties to look to the future, anticipate that there may be a breach and make a settlement in advance. This implies two things; (1) that the amount specified be a fixed amount and (2) that both parties be bound to that amount. The clause here does not disclose a fixed amount. In essence it fixes a minimum which must be paid by the home owner to the contractor, but leaves the door wide open to him to prove actual damage in addition to the so-called liquidated damage. This is no settlement at all and it permits the contractor to have his cake and eat it too." 214 NYS2d at 193.

Because the parties do not raise this issue, we need not decide whether provisions of this kind will *always* be ineffective as punitive damage proivisions. We merely note the possibility.

On cross-appeal, plaintiff contends that he should have been awarded attorney fees as the prevailing party pursuant to ORS 20.096. We agree.

■ ■ The parties' earnest money[4] contract provides that the prevailing party in an action brought on the contract is to be awarded attorney fees. We have stated that, as a general rule, where both the plaintiff and the defendant seek damages from each other by way of claim and counterclaim and both claims are upheld, the party in whose favor final judgment is rendered is entitled to attorney fees. *Marquam Investment Corp. v. Myers,* 35 Or App 23, 30-31, 581 P2d 545, *rev den* 284 Or 341 (1978). We have qualified that rule only to recognize that where one party seeks money damages and the other party seeks equitable relief and both prevail, it may not be appropriate to make an award. 35 Or App at 31. This case is squarely within the general rule: plaintiff prevailed on his claim to recover the $50,000 deposit, and defendants were found to be entitled to $6,500 actual damages, resulting in a net judgment for plaintiff of $43,500. Plaintiff is clearly the prevailing party and should have been awarded attorney fees.

■ In his second assignment on cross-appeal, plaintiff contends that the trial court erred in setting the rate of interest on the amount due him at 6 percent per year from May 29, 1979, the date of demand, until paid, pursuant to the version of ORS 82.010 in effect on May 29, 1979. This statute was amended, effective July 25, 1979, to increase the pertinent rates of interest from 6 percent to 9 percent. Or Laws 1979, ch 794, §§ 1, 3. Judgment in this case was entered after July 24, 1979; plaintiff contends that the interest rate on his award should be set at 6 percent from May 29, 1979, until July 24, 1979, and at 9 percent thereafter. Given the limited contentions of the parties, plaintiff is correct. *See Graham v. Merchant,* 43 Or 294, 311-13, 72 P 1088 (1903).

Affirmed in part; reversed in part; and remanded to determine plaintiff's attorney fees and to modify the rates of interest provided in the judgment.

---

[4] Defendant does not deny that this is an action brought under the contract.