Argued and submitted June 6, 1983, reassigned November 29, 1983, affirmed September 5, petition for rehearing denied October 23, 1984

ILLINGWORTH,
*Respondent on Review,*

*v.*

BUSHONG et al,
*Petitioners on Review.*

(TC 80-108-L; CA A20104; SC 29315)

688 P2d 379

Walter L. Cauble, Grants Pass, argued the cause for petitioners on review. With him on the briefs was Schultz, Salisbury & Cauble, Grants Pass.

Patrick G. Huycke, Medford, argued the cause and filed briefs for respondent on review.

LENT, J.

## LENT, J.

The narrow issue is whether the trial court erred in deciding that a forfeiture clause in an earnest money agreement was not a valid liquidated damages provision. We hold that there was no error in that respect. The broader question addressed in this opinion is how the validity of such clauses is to be tested.

## UNDISPUTED FACTS

Defendants owned a 373 acre ranch, which they listed for sale in July, 1978. Plaintiff viewed the property in August and on September 8 entered into an earnest money agreement to purchase the ranch for $490,000. That writing provided for an earnest money deposit of $50,000, of which $30,000 was paid at that time, and an additional $20,000 was to be paid on October 10. Plaintiff paid the additional earnest money.

The initial writing provided that closing was to occur on November 10, at which time another $124,000 was to be paid, and the defendants were to carry the balance on a contract. In mid October an addendum was added to the initial writing, extending the closing date to December 12. Plaintiff was unable to perform on that date.

The basic part of the earnest money agreement was on a printed form copyrighted by the Oregon Association of Realtors and, in this instance, supplied by the listing broker and salesman. A part of the printed portion was entitled "FORFEITURE PROVISIONS" and, in pertinent part, was as follows:

"* * * If the said sale is approved by the seller and title to said premises is marketable, and the purchaser neglects or refuses to comply with any conditions of sale within ten (10) days from the furnishing of a preliminary title report, or make payments promptly as set forth on the reverse side hereof, then the earnest money and additional earnest money receipted for on the reverse side hereof shall be forfeited, the cost of title insurance, escrow and attorney fees paid, and the remainder divided as provided on the reverse side hereof under Sellers [sic] closing instructions and fee agreement between the seller and the REALTOR to the extent of the agreed upon fee, and the residue, if any, paid to the seller as liquidated damages and this contract shall thereupon be of no

further binding effect, or at his option, seller may seek damages or specific performance of this contract."

When plaintiff was unable to perform on December 12, defendants advised him that they would not return the earnest money. The entire $50,000 earnest money, which had been deposited with a local title company, was released to defendants on December 13.

While the foregoing events were taking place, two other prospective purchasers had made offers to buy the ranch, but both offers had been withdrawn prior to plaintiff's failure to perform on December 12. One of those purchasers made a new offer in a writing dated December 13, and that offer was accepted by defendants on December 30. That sale closed January 25, 1979, for the same purchase price as the sale to plaintiff would have been, but with a higher down payment.

Plaintiff demanded return of the $50,000. Defendants refused to comply with the demand. Plaintiff then commenced this cause to recover that sum.

## PROCEEDINGS IN THE TRIAL COURT

The key issue was whether the above-quoted FOR-FEITURE PROVISION was valid as being a clause for liquidated damages or invalid as being a penalty for nonperformance. The parties waived a jury, and the trial court decided that the clause was unenforceable. The trial court decided that defendants had suffered actual damages as a result of plaintiff's breach in the amount of $6,500, and awarded plaintiff judgment for $43,500.[1] As a predicate for

---

[1] The trial court judgment provided for interest at six percent per annum from the date of plaintiff's demand for return of the earnest money. The trial court expressly refused to award either plaintiff or defendants attorney fees, although the earnest money agreement provided:

"If suit or action is filed on this contract, the party not prevailing agrees to pay the prevailing parties reasonable attorney fees which shall be fixed by the Court or Courts in which the suit or action, including any appeal therein is tried, heard or decided."

Plaintiff cross-appealed, assigning as error the refusal of the trial court to award to him reasonable attorney fees and the failure of the trial court to set interest on the award at nine percent per annum from July 25, 1979, the effective date of legislation setting that figure as the legal rate of interest on a judgment of this kind. In *Illingworth v. Bushong*, 61 Or App 152, 656 P2d 370 (1982), the Court of Appeals held for plaintiff in both

judgment for plaintiff, the trial court made findings from the bench at the close of the trial:[2]

"THE COURT: Well, I'm going to, as I indicate, decide this case from the bench. It's been requested I make findings. I'm going to try because of the amount of money involved. I think this case has every likelihood of appeal. I'm going to try to specifically show what I find as a finding and what I'm using as a conclusion.

"* * * * *

"I find that there's no question that the Plaintiff knew that there was a forfeiture clause. I find that the failure of the sale was entirely due to the buyer. Any changes because of this contract were minor or non-existent and were not — the reason that the contract, that the sale didn't go through, it was totally due to the buyer not having the money and not being able to come up with it. The question then comes as to whether this is a forfeiture or whether it's liquidated damages. It's my feeling it's a penalty. This is a point upon where we get to the question of law which is as I say, can be corrected on appeal if necessary.

"It is difficult perhaps to anticipate or to make an effort to find what the reasonable relationship of the stipulated amount bears to the actual damages. This means difficulty due to anticipating, not mechanical difficulty. Much has been made of the fact that it costs $50,000 a year to operate the ranch. That was not considered at that time. We heard the $50,000 a year to operate the ranch actually for the first time in the trial. That $50,000 a year was not broken down and the testimony was also that it included mortgage payments. We know that mortgage payments, part of them are capital. There was attempt to break down the actual operating costs. There was discussion of this. The evidence seems pretty clear that it was just a 10 percent rule of thumb because this is the way the state did it and this was custom. I don't think the question of backup buyers or not backup buyers are important, per se, except as to whether this could be reasonably anticipated if they were seriously considering actual damages."

## PROCEEDINGS IN THE COURT OF APPEALS

On appeal the defendants contended that the trial court had erred in holding that, "as a matter of law," the

---

respects. The petition for review in this court did not challenge that part of the decision of the Court of Appeals, and we do not further consider those matters.

[2] Certain findings adverse to contentions of the plaintiff are not included because they are not pertinent to disposition of this case or our discussion of this kind of case.

liquidated damages provision was a "penalty" and not an enforceable provision. They further contended that there was no evidence[3] to support the trial court's findings of fact:

(1) That the clause was a "penalty."

(2) That the figure of $50,000 as the yearly cost of operating the ranch was not considered at the time of making the contract.

(3) That the dollar figure chosen ($50,000) was just a 10% (of the purchase price) rule of thumb for earnest money and was the figure used by the state in its land dealings and that 10% was "custom."

The Court of Appeals first stated what it would take as the governing rules of law as they appear from two of our fairly recent decisions and one of that court's own decisions:

"A contract provision for liquidated damages is valid if it is designed to provide just compensation for the injured party in the event of a breach; if it goes beyond just compensation, however, it is unenforceable as a penalty. *Wright v. Schutt Construction*, 262 Or 619, 623, 500 P2d 1045 (1972). The test is whether:

" '(a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and

" '(b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation.' 262 Or at 623, quoting Restatement of Contracts § 339(1) (1932).

"To satisfy the first requirement, there must be a genuine pre-estimate of the injury; that is, the parties must make an honest and good faith effort to arrive at an accurate estimate. *Dean Vincent, Inc. v. McDonough*, 281 Or 239, 246, 574 P2d 1096 (1978). A showing that the liquidated damages are 'grossly disproportionate' to actual damages is evidence that the estimate was not reasonable. 281 Or at 246. The burden of proof, however, is on the party who seeks to avoid the clause.

---

[3] This case was tried in December, 1980. In April, 1981, we decided *Falk v Amsberry*, 290 Or 839, 626 P2d 362 (1981), in which we recognized a rule that unless a defendant tests the legal sufficiency of the evidence by motion "or a timely equivalen assertion" in the trial court, that issue cannot be considered on appeal. Since this cas was tried before our decision in *Falk*, we shall not apply that rule to this case, ever though in 1978 we had given indication of the rule to be eventually recognized in *Falk See Hendrix v. McKee*, 281 Or 123, 575 P2d 134 (1978).

281 Or at 249. The question is for the trier of fact, unless reasonable minds could not disagree as to the facts and the conclusions to be drawn from them. *Foster v. Peterson,* 42 Or App 249, 258, 600 P2d 490 (1979)."

61 Or App at 155.

The Court of Appeals then found there was substantial evidence to support the trial court's findings of fact resulting in the trial court's ruling that the clause was for a penalty:

"Here, the trial court specifically found that there was not a genuine pre-estimate of the damage that defendants would suffer should plaintiff fail to perform; rather, the amount of damages was selected on the basis of a rule of thumb that an earnest money deposit should represent 10 percent of the purchase price. There was substantial evidence in the record to support this determination, including defendants' inability, at deposition before trial, to state the amount of their monthly expenses in operating the ranch and the fact that their actual damages were, as the evidence showed, grossly disproportionate to the proposed liquidated damages. The trial court did not err in refusing to enforce the liquidated damages clause." (Footnotes omitted.)

61 Or App 155-56.

## REVIEW OF DECISIONS OF THIS COURT

We allowed the defendants' petition for review because of apparent ambiguity, if not confusion, in our pronouncements of the law applicable to this kind of case.

"Because of clashing precedent, it has become difficult to predict the result in any close case on the validity of a stipulated damages provision. The outcome often depends upon which set of conflicting rules the court chooses to follow; and in many cases the reasons for that choice have remained unarticulated."

*Layton Manufacturing v. Dulien Steel,* 277 Or 343, 350, 560 P2d 1058 (1977) (Lent, J., concurring).

In the ensuing discussion we shall use the word "clause" or the word "provision" to refer to the words of a contract that set the amount of damages to be recovered by one party from another in case of the latter's failure to perform as agreed. When we use the word "proponent" we

refer to the party who desires to enforce the clause or provision as a valid liquidated damages agreement. When we use the word "opponent" we refer to the party who contends that the clause or provision is unenforceable as being for a penalty.

Although confusion in our decisions existed prior to *Medak v. Hekimian,* 241 Or 38, 404 P2d 203 (1965), we shall go back only that far to trace present uncertainty. In *Medak* the proponents brought an action at law to recover the amount set in the provision. The opponents, among their affirmative defenses, pleaded that the provision constituted a "penalty and forfeiture" and was therefore "void and illegal and contrary to public policy." The proponents had verdict and judgment. On appeal the opponents contended that whether the provision was a penalty was a "question of law" and that the trial court should have allowed the opponents' motion for a nonsuit by holding the particular provision to be for a penalty.

This court agreed that the decision of penalty or liquidated damages was "one of law for the court." 241 Or at 44. The opinion states that two criteria are paramount in determining validity of the provision:

> "At the time of the making of the contract would the sum provided seem to bear any reasonable relationship to the anticipated damages and would the actual damages be difficult or impossible of ascertainment? If both answers are 'yes,' the sum provided would normally be considered liquidated damages. Restatement of the Law of Contracts, § 339; * * *."

241 Or at 44. The court stated that "the situation" must be appraised as of the time when the contract was effected. Addressing the first criterion, the court proceeded to abstract from the record "evidence from which the [trial] court could find" that at the time of making the contract the stipulated sum was not so grossly disproportionate to the probable actual damages resulting from failure to perform as to require it to be called a penalty. Addressing the second criterion, the court questioned whether at the time the opponents would be required to perform their contract there would be evidence available to the proponents to prove actual damages and the amount thereof. The court speculated that the proponents might, by reason of the opponents' failure to perform, suffer "actual damage" which would not be compensable under the

usual measure of damage. The court then made the following statement:

> "There would appear to be nothing reprehensible or unreasonable in the parties agreeing to a sum which would compensate plaintiffs for such actual anticipated loss in case of breach. It would certainly be actual damage of the most highly speculative type. These imponderables at the time of making a contract would seem to justify the use of a sum as liquidated damages as long as it was not disproportionate to actual anticipated damages."

241 Or at 45-46. The court then stated that it did not disagree with the trial judge's refusal to say the provision was a penalty.

We note that although the decision cites Restatement of the Law of Contracts, § 339 (hereinafter § 339(1)), for the court's statement of the two relevant criteria, there is a difference between the court's formulation of the two criteria and the text of § 339(1). That text is:

> "(1)   An agreement, made in advance of breach, fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless
>
> > "(a)   The amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and
> >
> > "(b)   The harm that is caused by the breach is one that is incapable or very difficult of accurate estimation."

With respect to the second criterion, the text of *Medak* and of § 339(1) are similar. *Medak* requires that the actual damages be "difficult or impossible" of ascertainment; § 339(1) requires that the harm caused by breach be "incapable or very difficult" of accurate estimation.[4] With respect to the first criterion appears the difference in concept. *Medak* speaks to the necessity of a "reasonable relationship" between the fixed sum and "the anticipated damages"; § 339(1) requires that the fixed sum be a "reasonable forecast" of actual harm. *Medak* is saying that, tested at the time of agreement on the fixed sum,

---

[4] If the actual damages or harm is either *impossible* of ascertainment or *incapable* of accurate estimation, *a fortiori,* such damages or harm is "difficult" or "very difficult" of ascertainment or estimation. We see no reason to continue to speak to impossibility or incapability; they are subsumed in the concept of difficulty.

the sum must bear a reasonable relationship to damages to be anticipated as of that time. The Restatement's requirement of a reasonable forecast of "the harm that is caused by the breach" is not the same. *Medak* is concerned with testing validity of the provision by reference to damages to be anticipated by the parties at the time of making the contract. The Restatement is concerned with whether the parties made a reasonable forecast of the harm that actually flows from the breach:

> "If the parties honestly but mistakenly suppose that a breach will cause harm that will be incapable or very difficult of accurate estimation, *when in fact the breach causes no harm at all* or none that is incapable of accurate estimation without difficulty, their advance agreement fixing the amount to be paid as damages for the breach is within the rule stated in Subsection (1) and is not enforceable. * * *" (Emphasis added.)

Comment *e* to § 339(1).

Since the time of citation to § 339(1) in *Medak* this court has sometimes used the "reasonable forecast" requirement of § 339(1) and sometimes the "reasonable relationship" test from the language of the decision in *Medak*. Often the decisions display no recognition of the difference. Chronologically, we shall briefly note what has occurred.

In *Weber v. Anspach,* 256 Or 479, 473 P2d 1011 (1970), a suit in equity by the proponent, this court, citing *Medak*, stated the test for validity in terms of "reasonable relationship," reviewed the evidence and affirmed the trial court's decree upholding the provision as valid and enforceable.

In *Harty v. Bye,* 258 Or 398, 483 P2d 458 (1971), an action at law, the proponent lost in the trial court. This court stated that the test for validity was that of § 339(1), citing *Medak* as authority, without noting any possible difference between the two. The court, noting the language of Comment *e* to § 339(1) and, finding that there was evidence from which the trial court could find the opponent's breach caused no damages whatsoever, affirmed the judgment below.

In *Wright v. Schutt Construction,* 262 Or 619, 500 P2d 1045 (1972), the proponent, a real estate broker, in an action

at law tried without a jury, sought to enforce a provision under which he would be paid his full commission of 10% if the opponent, the listing seller, withdrew the proponent's authority prior to expiration of the listing agreement. The trial court "held" the provision to be invalid as being for a penalty. This court noted that § 339(1) was concerned with excuse of contractual obligations that are contrary to public policy, but also noted that judicial hostility to provisions for agreed damages was waning because enforcement thereof saves the time of the courts and the parties and reduces the expense of litigation. This court recognized § 339(1) as being the "most widely accepted modern statement of the requirements which must be satisfied for a valid and enforceable contract provision for liquidated damages." 262 Or at 622. The opinion then recognized that although *Medak* had cited § 339(1) with approval, this court there had stated the requirements "in somewhat different terms." 262 Or at 623. This court then cited Corbin on Contracts, § 1059, and McCormick on Damages, § 149, as being consistent with the § 339(1) rule. The opinion then says:

> "There is general agreement * * * with the proposition that a contract provision for liquidated damages will not be declared to be a penalty because the stipulated amount to be paid as damages is more than the amount of the actual damages unless the stipulated amount is 'grossly disproportionate,' or has no 'reasonable relation' to the probable loss, as anticipated at the time of the contract."

262 Or at 624-25. The opinion continues by stating that if that gross disproportion or want of reasonable relation exists, the courts will refuse to enforce the provision because " 'the amount so fixed was not a reasonable forecast of just compensation.' " 262 Or at 625. This was a non sequitur; it simply reduced the question of reasonableness of forecast or reasonableness of relationship to the proof of the pudding. Not only that, it treated the questions as if they were the same. The decision follows with a paragraph which in essence holds that evidence that actual damages are nonexistent or grossly less than the stipulated amount is relevant to show a want of "bona fide" effort to forecast "expected possible damages."[5]

---

[5] "[E]xpected possible damages" is an interesting concept. Any event whose probability is more than zero is "possible"; however, expected "probable" damages would not meet the test that damages be difficult to estimate.

The opinion then returns to stating as the rule that, at the time of making the contract, the parties must have made an actual and "genuine" pre-estimate of the injury. The decision is then stated that the trial court did not err in *"finding"* [emphasis added] that the provision was not a reasonable forecast of "just compensation." The decision then notes that the proponent is not without remedy, for he is free to prove his actual damages.

In *Babler Bros., Inc. v. Hebener,* 267 Or 414, 517 P2d 653 (1973), an action at law, the proponent counterclaimed to enforce a provision, the validity of which this court analyzed as if it were an agreed damages provision. This court stated that in *Medak* and *Harty v. Bye, supra,* this court had "adopted" the test set forth in § 339(1). The opinion continues on to discuss whether the provision was a reasonable forecast of compensation for breach and that harm would be difficult to estimate. Once again, the court fails to recognize that there is a difference between the "reasonable relationship" test from *Medak* and the "reasonable forecast" of harm that *is* caused by the breach from § 339(1). Although the appeal was from judgment in an action at law, the court goes on to state that "the facts of this case do not disclose that forfeiture * * * was a reasonable forecast of compensation." The trial court's decision that the provision was unenforceable as being for a penalty was affirmed.

In *Schlecht v. Bliss,* 271 Or 304, 532 P2d 1 (1975), a suit in equity, this court reversed the trial court's decision against the proponent, stating that the case was governed by *Weber v. Anspach, supra,* applying the "reasonable relationship to the anticipated damages" test. The opinion discusses the evidence, apparently for the purpose of trying anew upon the record the two criteria. At that time ORS 19.125(3) provided that on appeal from a decree in a suit the cause was to be tried by this court anew upon the record.

In *Shaw v. Northwest Truck Repair,* 273 Or 452, 541 P2d 1277 (1975), an action at law tried without a jury on "stipulated facts," this court affirmed the trial court, which had held against the proponent. This court stated that we had adopted the rule of § 339(1) and that there was nothing in the record to satisfy the first requirement, namely, that the fixed

amount be a reasonable forecast for the harm that is caused by the breach.

The next case that we discuss, *Chaffin v. Ramsey,* 276 Or 429, 555 P2d 459 (1976), is the one on which defendants (proponents) in the case at bar chiefly rely. That case was decided by a four to three majority of this court. There, plaintiffs were the proponents. The contract was for the sale by proponents and purchase by opponent of real and personal property for a total price of $130,000. The contract was chiefly a pre-printed form supplied by the realtor through whom the negotiations leading to signing of the instrument were conducted. The printed material in "fine point" stated:

> "It is agreed that if either seller or buyer fails to perform his part of this agreement, he shall forthwith pay to the other party hereto a sum equal to 10 per cent of the agreed price of sale as consideration for the execution of this agreement by such other party."

276 Or at 440. The case was filed as an action at law in two alternative causes. The first cause pleaded the provision and that the defendant had failed to perform his part of the agreement of sale and purchase. The second cause alleged the making of the contract of sale and purchase, that the defendant had failed to perform by paying the agreed purchase price and that plaintiff had been damaged in the sum of $15,000. The prayer was for $13,000 on the first cause or, alternatively, for $15,000 on the second cause. As an affirmative defense defendant pleaded:

> "That the amount provided for as liquidated damages in the contract was not a reasonable forecast of just compensation for the possible harm which would be caused by a default of either party.
>
> "The clause appeared on a form contract and was not bargained for by the parties.
>
> "That the harm caused by the breach was, at the time of the contract, and now is, capable of accurate estimation."

The case was tried without a jury and the trial judge rendered a written opinion, in which it was stated that it was undisputed that defendant had failed to comply with the contract and that the parties did not discuss the "liquidated damages" clause. The trial court then made a "finding" that the clause was "unenforceable as not bargained for and not a

reasonable forecast of just compensation when actual damages could have been ascertained." The trial court then found the amount of actual damages and gave judgment therefor on the second cause of complaint.

On direct appeal to this court by the proponents, who had recovered judgment for less than the fixed $13,000, the majority held that the test was that set forth in *Medak,* namely, the "reasonable relationship to anticipated damages" rule. Proceeding to reversal of the trial court, the majority first acknowledged the statement from *Medak* that the question of penalty or liquidated damages is one of law for the court. From that point of departure the majority moved to a statement that there must be "evidence bearing upon" the two elements necessary under the *Medak* "reasonable relationship" rule. The opinion goes on to indicate that the question was "open" in Oregon as to whether the proponent or opponent of the clause has the burden of proof. The opinion ends by stating that even if the proponents have that burden, they met it in this case.

The dissent argued that the proponent of the clause has the burden of proof[6] in Oregon under prior decisions and that under plaintiffs' own evidence in this case, they had failed to meet that burden. The dissent argued that the correct rule for testing the evidence was that of § 339(1) combined with the holding in *Wright v. Schutt Construction, supra,* that there must be a "genuine pre-estimate of injury as of the time when the contract was made." 276 Or at 443-444. The dissent then found that under plaintiffs' own evidence there was no genuine pre-estimate because the parties to the contract never met, and there was no testimony by either party or the realtor of any discussion or negotiation for the provision. The amount was due no matter how material or trivial the breach or at what stage of promised performance.

We have reviewed *Chaffin* in some detail because it demonstrates that by 1976, only 11 years after *Medak,* the court was almost evenly divided as to whether the proper test was that of "reasonable relationship to anticipated damages"

---

[6] Neither the majority nor the dissent takes note that the opponent of the provision pleaded unenforceability as an affirmative defense. *See Layton Manufacturing v. Dulien Steel,* 277 Or 343, 560 P2d 1058 (1977), discussed later in the text of this opinion.

or "reasonable forecast of just compensation for the harm that is caused by the breach," with the latter being modified by requirement of a "genuine pre-estimate." *Chaffin* also demonstrates the almost even division of the court concerning burden of persuasion.

We then reached *Layton Manufacturing v. Dulien Steel, supra.* Plaintiff was proponent of the provision. Defendant raised an affirmative defense that the provision was unenforceable as being for a penalty. The trial court ultimately held for the defendant on this issue. We first stated that the question was one of law and was to be decided under the "reasonable relationship" test, for which we cited both *Medak* and § 339(1) as authority. We then discussed the many variables that would have been necessary to take into consideration in attempting to pre-estimate damages at the time of making the contract. We then said:

> "Because it would be speculation to decide the reasonableness of the damage estimate, the party bearing the burden of proof on this question must suffer the risk of nonpersuasion; and that party here is the defendant."

277 Or at 348. We noted that in *Chaffin* we had indicated that the better rule might be to assign the burden of proof to the opponent. We then turned to the record to discover that not only had the defendant (opponent) pleaded invalidity of the provision as an affirmative defense but that the opponent had presented the first evidence on the issue in the trial court. We held that, in those circumstances, defendant had the risk of nonpersuasion. Finding that the trial judge had seemingly assigned the burden of proof to the plaintiff, we reversed.

The next case to present this problem on direct appeal was *Dean Vincent, Inc. v. McDonough,* 281 Or 239, 574 P2d 1096 (1978). Plaintiff was a real estate broker, bringing an action at law on a listing agreement calling for $17,500 as liquidated damages for nonperformance by the defendant property owners. Plaintiff pleaded the cause in two counts, the first to enforce the liquidated damages clause, and the second to recover actual damages, also alleged to be $17,500. Defendants did not plead affirmatively that the provision was unenforceable as a penalty. Plaintiff's motion for a directed verdict for failure of the defendants to plead invalidity was denied by the trial court. The trial court instructed the jury to

determine whether the amount of harm would have been difficult to estimate at the time of making the contract and whether the sum of $17,500 was agreed upon as a reasonable forecast which would be suffered by plaintiff in the event of a breach. The court instructed the jury that if it found both elements established, the jury should award $17,500; otherwise, it was to award damages actually suffered. The jury gave verdict to plaintiff for $250.

On appeal plaintiff assigned error only for denial of its motion for directed verdict. This court examined the record and found evidence from which the jury could have found that there was no reasonable forecast of just compensation for loss because of want of a genuine pre-estimate of injury. We then noted that there was evidence from which the jury could have found that $17,500 was grossly disproportionate or without reasonable relationship to the actual damage found by the jury to have occurred. On that state of the evidentiary record, we ruled that there was ample evidence to support the verdict even if the burden of pleading and proof should have been assigned to defendant.

We then discussed what the law should be with respect to allocation of the burden of pleading and proof. In that setting the discussion was dictum, but we said:

"Although this court is not unanimous in its views upon this subject,[6] it is now the opinion of the majority of its members that this court should adopt what was referred to in *Chaffin* (at 436) as the 'modern view' to the effect that parties who negotiate the terms of a contract may properly include a provision for liquidated damages and that, in the absence of proof of oppression or 'adhesive' circumstances, the defendant should have the burden to both plead and prove that such a contract provision is invalid for failure to satisfy the two requirements of the rule as stated in Restatement of Contracts § 339, *supra,* and as previously adopted by this court."[7]

---

"6. *See* dissenting opinion in *Chaffin v. Ramsey,* 276 Or 429, 436, 555 P2d 459 (1976), and concurring opinion in *Layton Manufacturing v. Dulien Steel,* 277 Or 343, 350, 560 P2d 1058 (1977).

"7. The concurring opinion contends that defendant should also have the burden of proof on the issue of 'oppression or "adhesive" circumstances' and that this court should

discard the concept that the question 'whether a contractual provision is designed to operate as a penalty is a question "of law" for decision of the court.' We do not necessarily disagree with these contentions. Because, however, no such contentions were made in this case we do not believe that this is an appropriate case to decide these questions."

281 Or at 249.

In *Dean Vincent, Inc. v. Krimm,* 285 Or 439, 591 P2d 740 (1979), we dealt with a rather confusing record. The proponent real estate broker brought an action at law to recover from a listing seller a commission under the terms of a listing agreement. The clause provided that the broker was entitled to a full 10 percent commission (apparently of the price sought by the seller) if the seller withdrew the authority to sell during the listing period. Our examination of the record caused us to conclude that in the trial court the proponent had assumed the burden of proof of the two criteria necessary to make the clause enforceable as for liquidated damages. We noted, however, that the record did not contain any reference to "liquidated damages" or burden of proof prior to the briefs on appeal. The opinion is chiefly interesting for its statement of the rule of law to be drawn from *Dean Vincent, Inc. v. McDonough, supra.* We said that in that case we had held:

"[I]n the absence of 'adhesive' circumstances the defendant [opponent] should have the burden both to plead and prove that a provision for liquidated damages is invalid either because it did not represent a reasonable attempt to forecast just compensation for a breach or because the harm was capable of and not difficult of accurate estimation."

285 Or at 443. A comparison of that text with the quotation from *McDonough, supra,* at page 690 of this opinion discloses that the two statements differ, but it is apparent that in *Krimm* we did not intend to state a new rule; rather, we sought to enlarge upon the text of *McDonough,* more fully to state what is to be pleaded and proved to defeat an agreed damages clause.

## RULES FOR FUTURE CASES

In the cases from *Medak* in 1965 to *Krimm* in 1979 this court has necessarily addressed the validity of these clauses as a decision-making court, that is in the context of deciding cases as the parties presented them. All of the cases

just reviewed were before us on direct appeal. They were pleaded, tried and appealed in the light of the common law. They were decided under the common law as this court saw it, and where a change in the rules was recognized and applied it was because this court decided that a change in policy was decreed to meet changing times and concepts. For example, in *Chaffin v. Ramsey, supra,* the decision is remarkably forthright in recognizing the desirability of fixing the rules for testing the validity of these clauses under more modern judicial attitudes concerning freedom of contract and conservation of resources of parties and the courts.

During this 14 year period of decision making, some over strong dissent as in *Chaffin,* it appears that no case was so presented as to draw to this court's attention the fact that the legislature had addressed the issue with respect to the sale of goods in 1961.[7] In that year the legislature passed Oregon's version of the Uniform Commercial Code. Or Laws 1961, ch 726. The subsection on liquidated damages in contracts for the sale of goods was drawn directly from the UCC. ORS 72.7180(1) provides:

> "Damages for breach by either party may be liquidated in the agreement but only at an amount which is reasonable in the light of the anticipated or actual harm caused by the breach, the difficulties of proof of loss, and the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy. A term fixing unreasonably large liquidated damages is void as a penalty."

Insofar as policy choice is concerned, enactment of the statute makes the choice, or choices, by the constitutional department of state government that is responsible to the people for that kind of choice.

It is true that the legislature's choice, by its terms, applies only to contracts for the sale of goods, but we are unable to perceive any good reason for not using that same rule as the initial point of departure for analyzing the validity of provisions for liquidated damages in contracts in general. It

---

[7] The existence of the subsection 2-718(1) of the Uniform Commercial Code, codified in Oregon as ORS 72.7180(1), was recognized in the concurring opinion in *Layton Manufacturing v. Dulien Steel,* 277 Or 343, 354-355, 560 P2d 1058 (1977). No one had urged application to the case then at hand of the principles of ORS 72.7180(1), however, and decision of that case was achieved without pronouncing any "new law."

may be that reasons for variance will surface in the context of litigating the validity of such provisions, but until then the courts of this state shall follow that legislative formulation in cases of this kind. Citations to cases earlier than this one that state or suggest conflicting rules are to be disregarded unless a decision cited is of assistance in interpreting the text of ORS 72.7180(1).[8]

There will inevitably arise situations that require judicial interpretation of the text chosen by the legislature. We believe that guidance to necessary interpretation may be found by resort to Restatement (Second) of Contracts, § 356(1):

"Damages for breach by either party may be liquidated in the agreement but only at an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss. A term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty."

The commentary is also enlightening. The Reporter's Note to the section makes it abundantly clear that the American Law Institute believed § 356(1) to be in harmony with subsection 2-718(1) of the Uniform Commercial Code, codified in Oregon as ORS 72.7180(1).[9]

---

[8] We regard it as being just as much a function of this court to keep its own law "in order" as to resolve inconsistencies of Court of Appeals decisions, whether intramural or, vis-a-vis this court, extramural.

"A fair measure of agreement has come to exist among jurists that the principal function of the top court in a three-tier judicial system is *to keep the law in proper order.*" (Footnote omitted. Emphasis added.)

R. Leflar, *Internal Operating Procedures of Appellate Courts,* page 4. *See also* American Bar Association Standards of Judicial Administration Relating to Appellate Courts, page 4-5, approved by the House of Delegates in February, 1977:

"In [court] systems having an intermediate appellate court, * * * the supreme court exercises a function of selective review, the purposes of which are to maintain uniformity of decision among subordinate courts and to reformulate decisional law in response to changing conditions and social imperatives."

[9] For analysis of subsection 2-718(1) of the Uniform Commercial Code text, we have found helpful insight in Dean Hawkland's *A Transactional Guide to the Uniform Commercial Code,* Vol. 1, 170-172, and in Wallach, *The Law of Sales,* 1046-1053. *See also* Nordstrom, *Sales,* 472-474.

## THE CASE AT BAR

The case at bar was pleaded and tried in the manner which our previous decisions recognized as being the modern rule. Plaintiff, as opponent of the validity of the clause, pleaded both that the amount fixed was not a reasonable forecast of just compensation for the defendants' harm resulting from his failure· to perform and that the loss was not incapable or very difficult of accurate estimation. Defendants, as proponents, did plead that the loss was incapable or difficult of accurate estimation and that the amount fixed in the clause was a reasonable forecast of "anticipated" damages, but the cause was tried as if plaintiff had the burden of proof to establish the allegations in his complaint.[10] We are presently of the belief that the same result would obtain if the text of ORS 72.7180(1) were the point of departure, but it is not necessary that we here interpret or construe that text, and we do not do so.

This was an action in which the parties had a right to trial by jury. They stipulated to try the case without a jury. The findings of the trial court "have the same force and effect" and are "equally conclusive, as the verdict of a jury." ORCP 62F. Upon appeal and on review in this court, defendants have directed our attention to evidence from which the trier of fact might have found in their favor. That could be of no concern to either the Court of Appeals or this court, however, for in these circumstances an appellate court cannot reject the findings of fact of the trial court unless the appellate court can say affirmatively that there is no evidence to support the fact found by the trial court. Defendants have argued that such is the case here, but we agree with the Court of Appeals that there was evidence, as summarized by that court, 61 Or App 155-156, which we have quoted, *supra,* at page 681, to support the findings of the trial judge on both criteria discussed above.

The judgment of the Court of Appeals is affirmed.

---

[10] In their respective briefs in the Court of Appeals the parties agreed that plaintiff had the burden of proof.