Argued and submitted July 18, reversed and remanded September 4, 1996

POPICK & MERKEL,
*Respondent,*

*v.*

TRI-COUNTY METROPOLITAN
TRANSPORTATION DISTRICT OF OREGON,
a municipal corporation,
*Appellant.*

(94C-818085; CA A89797)

923 P2d 1275

John R. Faust, Jr., argued the cause for appellant. With him on the briefs was Schwabe, Williamson & Wyatt.

Willard E. Merkel and Popick & Merkel filed the brief for respondent.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LEESON, J.

## LEESON, J.

Defendant appeals from a judgment based on a jury verdict that awarded plaintiffs damages for intentional interference with a contract. We reverse.

Plaintiffs are attorneys, whose client, Overton, allegedly was injured when the Tri-Met bus on which he was a passenger collided with an uninsured vehicle. On November 1, 1993, plaintiffs informed Tri-Met in writing that they represented Overton in his personal injury claim against Tri-Met. Larkin, Tri-Met's claims adjuster, responded in writing and denied liability. In April 1994, plaintiffs made a demand for settlement on Overton's uninsured motorist claim.[1] On the morning of June 1, 1994, Larkin responded by telephone, offering to settle for $3,206, which would cover Overton's claimed medical expenses of $2,206 and $1,000 in noneconomic damages. After consulting with Overton, plaintiffs rejected the offer. That afternoon, Overton telephoned Larkin. According to Larkin's testimony:

> "I said that I could not talk with him, he was represented. He said no I'm not. I'm not represented anymore. I terminated the services of my attorney. And because I had knowledge of Mr. Overton before, I didn't trust him. People just can't call and say I'm not this or I'm not that. I don't usually trust what they have to say, so I want to see something in writing. So I said you're going to have to show me that in writing. I can't talk with you."

The same day, Overton went to plaintiffs' office, where he delivered a letter to plaintiffs' secretary terminating them as counsel. He then went to the Tri-Met offices, presented Larkin with a copy of that letter bearing plaintiffs' receipt stamp. Overton then negotiated settlement of his personal injury claim for $2,000. Thereafter, Overton made no payments toward his medical expenses or for any amount due plaintiffs under their contingent fee agreement with him.

---

[1] There is no dispute that Tri-Met would be responsible for uninsured motorist benefits, because the accident was caused by an uninsured motorist and Overton does not have his own coverage.

Plaintiffs brought this action against Tri-Met, claiming that Larkin intentionally interfered with their contractual relations with Overton and seeking $1,254 in damages (one-third of Tri-Met's $3,206 settlement offer plus $186 in out-of-pocket expenses). After the close of evidence, Tri-Met moved for a directed verdict on the ground that there was no evidence to support plaintiffs' claim. The trial court denied the motion and submitted the case for the jury's determination of whether Larkin intentionally interfered with plaintiffs' contract by improper means. With respect to that question, the court specifically instructed the jury that

"[a]ny communication which occurs while a claimant is represented by counsel which a reasonable [person] could take as suggesting or encouraging that the claimant discharge counsel, is a wrongful communication whether or not the communication is intended to convey that meaning."[2]

The jury returned a verdict for plaintiffs, awarding damages in the full amount of the plea. The trial court denied Tri-Met's motion for judgment notwithstanding the verdict, ORCP 63, and entered judgment on the verdict.

■ Tri-Met assigns error to the court's denial of its motion for a directed verdict. It argues that there was "no evidence that defendant in any way induced Overton to breach" his contract with plaintiffs by improperly communicating with him while he was a represented client. Plaintiffs respond that inferences that can be drawn from the evidence demonstrate that defendant intended to interfere with their contract by improper means. According to plaintiffs, the jury could infer that Larkin made improper comments to Overton while he was represented and that she requested that he "prepare a written note discharging plaintiffs and deliver it [to] plaintiffs so that she might conclude a settlement with Overton that same day for an amount insufficient to pay even claim expenses and attorneys' fees." We review the evidence, including all reasonable inferences that can be drawn from it, in the light most favorable to plaintiffs. We will set aside the verdict if there is "no evidence from which the jury could have

---

[2] We express no opinion about whether that instruction is a correct statement of the law, because Tri-Met did not assign error to it on appeal.

found the facts necessary to establish the elements" of plaintiffs' claim. *Brown v. J. C. Penney Co.*, 297 Or 695, 705, 688 P2d 811 (1984).

■  It is well settled that liability for the tort of intentional interference with contractual relations arises only when the interference that results in injury is "wrongful by some measure beyond the fact of the interference itself." *Top Service Body Shop v. Allstate Ins. Co.*, 283 Or 201, 209, 582 P2d 1365 (1978). In short, a plaintiff is entitled to take a case to the jury only if there is proof that the defendant intentionally interfered with contractual relations and that the defendant interfered for an improper purpose or by some wrongful means. *Uptown Heights Associates v. Seafirst Corp.*, 320 Or 638, 651, 891 P2d 639 (1995); *Straube v. Larson*, 287 Or 357, 361, 600 P2d 371 (1979). In this case, the only issue is whether there is any evidence to support the jury's determination that defendant intentionally interfered with plaintiffs' contractual relations by wrongful means.

■  The parties appear to agree that intentional communication with a represented client could constitute wrongful means for purposes of the tort of intentional interference with contractual relations. The essence of their dispute, as framed by the trial court, is whether Larkin talked to Overton "in a way which encouraged [him], by implication at least, to fire [his] lawyer and come back." The only evidence of the communication between Larkin and Overton is Larkin's testimony. During direct examination by plaintiffs, she stated and reiterated that Overton called her by telephone and that she told him that she could not speak to him. She further testified that Overton then told her that he had fired his attorney. Only then, according to her testimony, did she tell him that he would have to verify in writing that he had fired plaintiffs. Plaintiffs presented no evidence to rebut Larkin's testimony. They contend that any statement by Larkin beyond telling Overton that she could not speak to him constitutes improper communication. Thus, they argue, the events that followed—the ensuing settlement between Overton and Larkin for an amount less than Tri-Met had offered earlier that same day and Larkin's issuance of a draft solely to Overton that allowed him to avoid payment of medical expenses and attorney fees—create an inference that

Larkin induced Overton to fire plaintiffs. Plaintiffs seek to infer wrongful means from the fact of the alleged interference, a leap that we are not entitled to make. *Top Service Body Shop*, 283 Or at 209. Moreover, even assuming that the jury doubted Larkin's account of her conversation with Overton, that doubt would not be sufficient in the absence of any other evidence to prove that she induced him to fire plaintiffs. A conjecture based on a possibility that a thing could have happened is not the same as an inference that can be drawn from facts in evidence. *Hickey v. Settlemeier*, 141 Or App 103, 113, 917 P2d 44 (1996). Consequently, the trial court erred in denying Tri-Met's motion for a directed verdict.

Reversed and remanded.