Argued and submitted April 3, affirmed June 10, petition for review denied August 11, 1998 (327 Or 484)

## BEND TARP AND LINER, INC.,
an Oregon corporation,
*Appellant,*

*v.*

## William BUNDY
and The Whitcomb Group,
*Defendants,*

*and*

## CASCADE HIGHLANDS, LLC,
and United Pacific Insurance Co.,
a Pennsylvania corporation,
*Respondents.*

(95CV-0515-AB; CA A96548)

961 P2d 857

Lawrence W. Erwin argued the cause for appellant. On the briefs were Peter A. Ozanne and Schwabe, Williamson & Wyatt.

John A. Berge argued the cause for respondents. With him on the brief were Mark G. Reinecke and Bryant, Lovlien & Jarvis.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Plaintiff appeals from a judgment that denied its claim to foreclose a construction lien and that awarded defendants damages for breach of contract. We affirm.

Defendants hired plaintiff to install a polyethylene membrane liner in a pond on defendants' golf course in Bend. The pond was to serve as a source of water to irrigate the course. The purpose of the liner was to prevent the water in the pond from escaping through the soil. Defendants had excavated the pond themselves, leaving a central island green that was surrounded by a retaining wall constructed of railroad ties and boards.

After the pond had been constructed and the liner installed, defendants began to fill the pond. The filling was done overnight, with no one observing the process. The next morning, defendants discovered that, at some point during the filling, a section of the retaining wall had collapsed. At the site of the collapse, the liner was torn and water had escaped through the tear. Although the tear was repaired soon after, water continued to escape from the pond in quantities greater than defendants had expected. Defendants believed that the water loss was attributable to a defectively installed liner, while plaintiff insisted that the collapse of the retaining wall was to blame for the tear in the liner and that any other defects were caused by defendants' careless treatment of the liner after it had been installed. Defendants refused to pay plaintiff for the liner unless plaintiff repaired it. Plaintiff refused to repair the liner, claiming that defendants had caused the damage that they wanted plaintiff to repair.

After defendants refused to pay, plaintiff filed a construction lien for the amount of the contract plus interest. When defendants still did not pay, plaintiff brought this action to foreclose its lien. In addition to foreclosure, plaintiff sought damages for breach of contract and, in the alternative, recovery in *quantum meruit* for the work that it had performed on the pond. As an affirmative defense to plaintiff's claims, defendants alleged that plaintiff had breached the parties' contract and that they had received no benefit from

the liner that plaintiff had installed. Defendants also asserted a counterclaim for plaintiff's alleged breach of contract, seeking damages for the cost to replace or repair the liner and for the loss of water attributable to the breach.

After trial, the court found that plaintiff had not allowed enough slack when it installed the liner and that the improper installation had caused the liner to stretch and to pull down the retaining wall to which it had been attached. That, in turn, had led to the large tear at the site of the wall collapse. The court also found that the liner was defective in areas away from the collapsed wall and that those defects were attributable to plaintiff. Accordingly, the court concluded that plaintiff was not entitled to foreclose its construction lien, and it awarded defendants attorney fees for defending against the lien. In addition, the court found for defendants on their counterclaim for breach of contract and awarded them $50,000 in damages.

Plaintiff makes three assignments of error. First, it contends that the court erred when it rejected plaintiff's *quantum meruit* claim, based on its determination that defendants had not received any benefit from plaintiff's work. Second, it contends that the court erred when it did not offset the damage award to defendants on their counterclaim by the value of the pond liner. Third, it contends that the trial court erred when it concluded that plaintiff had breached the contract and was, therefore, not entitled to foreclose its construction lien.[1]

■    Plaintiff's first and second assignments of error are, in essence, challenges to the sufficiency of the evidence on which the trial court based its findings on the legal claims. Addressing the *quantum meruit* claim, plaintiff argues that "uncontroverted evidence established that plaintiff conferred a benefit upon defendants [that] they elected to retain."

---

[1] Plaintiff also claims that the trial court's award of damages was incorrect because it did not address defendants' failure to avoid the consequential water loss and because the Oregon Uniform Commercial Code required defendants to prevent their losses to the extent those losses could be prevented, ORS 71.7150(2)(a). Plaintiff did not raise those issues before the trial court and, therefore, we will not address them on appeal. *Finney v. Bransom*, 143 Or App 154, 159, 924 P2d 319 (1996), *aff'd in part and rev'd in part on other grounds* 326 Or 472, 953 P2d 377 (1998).

Accordingly, plaintiff contends that it is entitled to recover the value of that benefit. The trial court found, however, that defendants had received no benefit from the installation of the liner, because the liner would have to be repaired substantially or replaced before it would perform as desired. The trial court's refusal to offset defendants' damages award on the counterclaim by the value of the liner is attributable to that same finding.

■ The alleged errors about which plaintiff complains were not preserved below. A party that contends that it is entitled to prevail on a claim or issue as a matter of law must ask the trial court to withdraw the claim or issue from the factfinder, whether the case is tried to a jury or to the court. *See, e.g., Wilkes v. Zurlinden*, 146 Or App 371, 378, 932 P2d 584, *vacated on other grounds* 325 Or 489, 940 P2d 518 (1997), *adhered to on remand* 152 Or App 130, 952 P2d 569, *rev allowed* 327 Or 192 (1998).[2] If, as plaintiff now contends, the uncontroverted evidence establishes that defendants benefitted from plaintiff's labor and materials, plaintiff should have sought a decision as a matter of law on its right to recover in *quantum meruit* and to receive an offset on any award of damages to defendants. Plaintiff did not do that. At no time did plaintiff notify the trial court that it was entitled to prevail on those issues as a matter of law. Consequently, we will not disturb the trial court's rulings on plaintiff's first two assignments of error.[3]

---

[2] We need not decide whether the withdrawal of a claim or issue can be raised only by motion in a case tried to a court, *see Wilkes*, 146 Or App at 378, or whether it can be raised in some other manner. That is because plaintiff did not raise in any manner the issue whether it was entitled to prevail, as a matter of law, on its *quantum meruit* claim or its claimed offset. Our review of such an issue is for legal error. *See, e.g., GPL Treatment, Ltd. v. Louisiana-Pacific Corp.*, 323 Or 116, 118, 914 P2d 682 (1996); *Popick & Merkel v. Tri-Met*, 143 Or App 354, 357-58, 923 P2d 1275 (1996). Unless the trial court is asked to decide the issue as a legal rather than a factual issue, and then decides the legal issue incorrectly, there is no error for us to review. The simplest way to preserve such an error in a case tried to the court is to make a motion equivalent to the motion that must be made to preserve a comparable issue in a case tried to a jury. For example, if the present case had been tried to a jury, plaintiff would have had to have sought a peremptory instruction on its right to recover in *quantum meruit* and to receive an offset for the value of the liner in order to raise as error on appeal the court's failure to award that relief. Because the case was tried to the court rather than to a jury, the issue could have been preserved by making an equivalent motion that asked the court to decide the issue as a legal rather than a factual one.

[3] We would reach the same result even if plaintiff had raised the alleged errors below, because there is evidence to support the trial court's finding that defendants received no benefit from the pond liner that plaintiff installed.

Plaintiff's third assignment of error is that the trial court incorrectly interpreted the evidence presented by the parties when it concluded that plaintiff was not entitled to foreclose its construction lien because it had not fulfilled its contractual obligations. In its letter opinion, the court stated:

"The greater weight of the evidence establishes that the liner failed due to being stretched too tightly when water was pumped into the pond, a situation which, according to [plaintiff], is always a consideration in liner installations. The observations of defendants' witnesses, including Mr. Wick, the photographic evidence, the statements of Mr. [Perlatti] on the day the failure was discovered, the overall condition of the liner and continued serious leakage are persuasive.

"The liner, even after repairs by [defendants], continues to leak at an unacceptable rate. It does not work properly. Plaintiff breached its contract to install the liner. Plaintiff is not entitled to foreclose its lien or recover the contract price."

Because a claim to foreclose a construction lien is an equitable claim, we review the decision on that claim *de novo*. ORS 19.415(3). We nevertheless give substantial weight to the trial court's findings in those equity cases where, as here, the findings depend on the resolution of conflicting testimony. *See, e.g., Robert Lloyd Sheet Metal v. Sheet Metal Workers' Int'l*, 325 Or 457, 459, 940 P2d 1214 (1997); *Krueger's Estate v. Ropp*, 282 Or 473, 478-79, 579 P2d 847 (1978).

The parties offered contradictory evidence on virtually every point. Plaintiff argues that the evidence shows that any defects in the pond liner that would allow water to escape were the result of defendants' failure properly to construct the retaining wall around the island green and of defendants' careless treatment of the liner after it was installed. In support of its argument, plaintiff directs our attention to numerous photographs purporting to show that the liner had been installed with sufficient slack to avoid harmful stretching or pulling of the liner as the pond was filled with water, along with photographs showing rocks on the surface of the liner that plaintiff contends were put there either purposely or negligently by defendants and that could have torn the liner. Plaintiff offered expert testimony about the construction of the retaining wall, specifically that section of the wall that

collapsed, in support of its contention that the wall collapse was responsible for the first and most obvious defect in the liner. Plaintiff's expert testified that the vertical supports for the wall had not been sunk deeply enough into the earth to support the weight of saturated soil. Plaintiff also introduced testimony questioning the amount of cement used to anchor the supports in the post holes. Finally, plaintiff challenges defendants' claim of water loss, arguing that defendants have offered no explanation of where the water could have gone.

In response, defendants offered photographic evidence purporting to show defects in the liner immediately after what they term the liner's "blow-out" in August 1995, as well as photographs memorializing defendants' own repair efforts. Defendants' water supplier testified at trial that his inspection of the liner immediately after the blow-out revealed a number of areas where the liner had been torn or where it had never been welded together. He testified that he believed that water had escaped through the liner and, in doing so, had eroded the soil under the liner, exposing rocks that then produced wear, causing further leakage. He further testified that the condition of the liner at the point where the retaining wall had collapsed led him to believe that the liner had pulled the retaining wall down when it stretched in response to being filled with water. Defendants testified that they had repaired the liner themselves after the blow-out by inserting a four-foot-wide section of tarp around the island, thereby adding sufficient slack to prevent the liner from pulling on the retaining wall.[4] They argue that any slack plaintiff claims to have observed after the blow-out is attributable to this repair.

Our *de novo* review of the evidence offered at trial and of the parties' photographic records convinces us that the

---

[4] Plaintiff argues that it repaired the "blown-out" section of the liner at defendants' request. Defendants testified that plaintiff only marked areas in need of repair and never completed the repairs. Plaintiff does not dispute that defendants repaired the liner by adding extra material to alleviate any strain on the liner. Although the trial court did not make any findings as to the credibility of the witnesses, it clearly rejected plaintiff's testimony that it had made repairs. That rejection of plaintiff's testimony reasonably may be interpreted as a reflection on plaintiff's credibility and, therefore, we defer to the trial court's finding that plaintiff made no repairs. *See Robert Lloyd Sheet Metal v. Sheet Metal Workers' Int'l*, 325 Or 457, 459, 940 P2d 1214 (1997).

trial court correctly concluded that plaintiff had not installed the liner properly and that the improper installation had caused defendants' water loss. The most obvious damage, the large tear at the site of the collapsed retaining wall, appears from the photographs to have been caused when the water-filled liner pulled at the "boots" surrounding the vertical wall supports. In addition to the stress on the boots, a portion of the liner had been installed behind the wall and, as it stretched in response to the weight of the water, it pulled outward against the wall. This combination of stressors pulled down the wall and tore the liner. Although it is possible that the wall might not have fallen if defendants had constructed it better, the ultimate cause of the collapse was the overly taut liner. The testimony of plaintiff's president that he had never seen a liner with the elongation capacity of the one that plaintiff had used to line the pond is not persuasive, because he offers no objective evidence of the liner's performance under similar conditions and he cannot be said to be a disinterested observer.

Had insufficient slack been the only defect, it is reasonable to assume that defendants' water loss would have stopped once the tear was repaired. The evidence indicates, however, that the pond continued to lose water at a high rate, losing far more water than defendants' other, clay-lined ponds. Plaintiff's argument that the water loss measured by Wick at the end of two irrigation seasons was caused by defendants' careless treatment of the liner does not explain why the pond's water loss continued at what appears to have been a steady rate from the very beginning. Moreover, we are unpersuaded by plaintiff's argument that any holes and tears in the liner are due to defendants' inadequate preparation and compaction of the pondbed. Accordingly, we conclude that the trial court properly found that plaintiff had breached the contract to install a liner to prevent the loss of stored water and, therefore, was not entitled to foreclose its construction lien.

Affirmed.