Argued and submitted September 1, 2000, affirmed April 25, 2001

RESOURCES NORTHWEST, INC.,
an Oregon corporation,
*Respondent,*

*v.*

William RAU,
*Appellant.*

(D984409EV; CA A106944 (Control))

RESOURCES NORTHWEST, INC.,
an Oregon corporation,
*Respondent,*

*v.*

Debi DIRKS,
*Appellant.*

(D984410EV; CA A106945)
(Cases Consolidated)

22 P3d 1238

Gary Abbott Parks argued the cause and filed the brief for appellants.

Kevin Luby argued the cause for respondent. With him on the brief was Luby, Creasing & Daraee.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LANDAU, P. J.

## LANDAU, P. J.

Plaintiff Resources Northwest, Inc. (RNI), is the owner and operator of a mobile home park in Tualatin, Oregon. It initiated this action for forcible entry and detainer (FED) against defendants William Rau and Debi Dirks, two tenants of the park, based on their failure to pay rent. Both defendants asserted various counterclaims for violations of the Residential Landlord and Tenant Act (RLTA), ORS chapter 90. The trial court, hearing the case without a jury, held for RNI on both the FED claim and the counterclaims. Defendants appeal, assigning error to the judgment on two counts of the RLTA counterclaim. We affirm.

We state the facts in the light most favorable to RNI, which prevailed at trial. Rau and Dirks began living in the RNI mobile home park in 1987 and 1994, respectively. Their rental contracts provided that RNI would provide water and sewer services.

In December 1997, RNI sent a notice to its tenants that, beginning April 1, 1998, tenants would be responsible for their own water and sewer charges. Meanwhile, RNI retained the services of Energy Billing Services (EBS) to install water meters, to monitor water usage, and to send bills to the tenants. On March 30, 1998, RNI sent a second notice to its tenants. That notice also advised the tenants that, during the month of April 1998, water meters would be installed for each mobile home. The notice told them that, if they had any questions or concerns about the installation process, they should contact EBS at the telephone number provided. In late April 1998, workers installed meters on the skirting of both Rau's and Dirks's mobile homes.

When bills from EBS began to arrive, some tenants —including defendants—complained about having to pay for water and sewer service. Several wrote RNI and declared that they would refuse to pay the bills when they arrived from EBS. In response, in August 1998, RNI rescinded its decision to require tenants to pay separately for water and sewer service and, instead, sent a notice that it would simply increase rent effective November 1998. Meanwhile, several tenants—including defendants—refused to permit RNI to

enter their property for the purpose of reading the water meters. On September 1, 1998, the secretary of a tenants' association hand-delivered to RNI written statements from a number of tenants—including Rau and Dirks's roommate—that access to the property was denied. Meanwhile, defendants refused to pay the rent increase, and RNI initiated this FED action in response. RNI initiated separate actions against Rau and Dirks, but the two actions ultimately were consolidated.

Defendants denied the allegations of the FED but deposited with the court the amount of rent that RNI claimed was due. They also asserted a counterclaim for violation of the RLTA. They listed a number of different counts within that counterclaim, two of which are pertinent to this appeal. First, in Count 2, defendants claimed that RNI unlawfully entered their premises to install the water meters without giving proper notice. According to defendants, RNI's notice was too open-ended to constitute valid notice under the RLTA. RNI responded that it fully complied with the statutory obligation to provide a minimum of 24 hours' notice. Defendants conceded that RNI provided 24 hours' notice, but insisted that the statute should be read to include an implicit time limit on the effectiveness of notices of entry. Defendants also contended that, even if the notice was effective, they exercised their right to object, and RNI violated the law by entering their premises anyway to install the water meters. Rau testified that he spoke to an employee at RNI's office to object to the attachment of a water meter to his home. Dirks testified that she telephoned EBS to tell them that she did not want them to install a meter. RNI argued that neither Rau nor Dirks actually objected to *entry*; rather, they objected to the idea of water meters being installed so that they could be charged for the service.

Second, in Count 3, defendants claimed that RNI unlawfully entered their premises to read the water meters without proper notice. They also contended that, even if the notices were effective, they again exercised their right to object, and RNI violated the law by entering their premises to read the water meters. Both defendants testified that they had notified RNI or EBS of their objections to any entry on

their property for meter-reading purposes. In addition, written evidence of hand-delivered objections to entry for the purpose of reading meters was introduced and received without objection. In response to that counterclaim, RNI offered no contrary evidence. Instead, it argued that defendants failed to establish that RNI actually had entered their property to read the meters after the September notice and that, in any event, defendants' testimony simply was not credible.

■ The trial court found for RNI on the FED claim but permitted defendants to remain in possession because they had deposited with the court the amount of rent that RNI claimed was due. On Counts 2 and 3, the court found:

> "**Count 2:** The tenants did not timely object to the installation of the meters, even though given ample warning. The landlord did not abuse any right to access. The court finds for the landlord.

> "**Count 3:** The tenants were notified as required by statute. The court finds for the landlord."

On appeal, defendants first argue that the trial court erred in dismissing Counts 2 and 3 because the landlord failed to provide adequate notice of intent to enter to install the water meters and later to read the meters. They argue that the court erred in failing to conclude that the law implicitly imposes an expiration date on a landlord's 24-hour notice of entry. RNI argues that the court was correct, because the statute contains no such limitation.

ORS 90.322 (1997)[1] provides, in part:

> "(1) A landlord may enter into the tenant's dwelling unit or any portion of the premises under the tenant's exclusive control in order to inspect the premises, make necessary or agreed repairs, decorations, alterations or improvements, supply necessary or agreed services, or exhibit the dwelling unit to prospective or actual purchasers, mortgagees, tenants, workers or contractors. The landlord's right of access is limited as follows:

> "* * * * *

---

[1] In 1999, the legislature amended the statute in ways that do not affect the outcome of this appeal.

"(e)  * * * [U]nless there is an agreement between the landlord and the tenant to the contrary regarding a specific entry, the landlord shall give the tenant at least 24 hours' actual notice of the intent of the landlord to enter and the landlord may enter only at reasonable times. The landlord may not enter if the tenant, after receiving the landlord's notice, denies consent to enter. The tenant must assert this denial of consent by giving actual notice of the denial to the landlord or the landlord's agent or by attaching a written notice of the denial in a secure manner to the main entrance to that portion of the premises or dwelling unit of which the tenant has exclusive control, prior to or at the time of the landlord's attempt to enter.

"(2)  A landlord shall not abuse the right of access or use it to harass the tenant. A tenant shall not unreasonably withhold consent from the landlord to enter."

On its face, the statute prescribes a *minimum* period of notice: 24 hours. The statute expresses no maximum time limitation on the effectiveness of the notice. The only limitations on a landlord's right of entry following the minimum period of notice are: (1) that the tenant has the right to withhold consent, if exercised reasonably; and (2) the landlord may not unreasonably exercise the right of entry.

Defendants acknowledge that the statute, on its face, includes no particular time limitation for the exercise of a landlord's right of entry. They nevertheless insist that we should imply such a limitation based on the context of the statute. They observe that, under ORS 90.322(1)(c) (1997), if a tenant requests repairs or maintenance, the landlord is authorized to enter the premises, but the authorization "expires after seven days, unless the repairs are in progress and the landlord is making reasonable effort to complete the repairs in a timely manner." According to defendants:

"This strongly suggests that when the landlord wants the access, the duration of effectiveness of the landlord's notice should not be longer than seven (7) days as well. There is no cogent argument that the landlord's notice should be good for any longer than seven days, much less that such notice should be good forever."

What subsection (1)(c) strongly suggests, however, is that, when the legislature wants to impose a limitation on

the effectiveness of a right of entry, it knows how to do so. The fact is that the language that appears in subsection (1)(c) does not appear elsewhere in the statute.

■ In the alternative, defendants argue that, even if RNI's notices of entry were adequate, RNI was not permitted to enter their premises, because the installation and reading of water meters is not included in the list of activities for which a landlord lawfully may obtain access. The statute, however, permits a landlord to enter a tenant's premises to make "alterations or improvements" or to "supply necessary or agreed services." We reject the argument without further discussion.

■ Defendants next argue that the trial court erred in dismissing Counts 2 and 3 because there was undisputed evidence that they had exercised their right to object. As to the installation of meters, defendants point to the undisputed evidence that both Rau and Dirks had telephoned RNI and EBS, respectively, to complain about the installation of water meters. As to the reading of the meters, defendants rely on the undisputed evidence that the secretary of the tenants' association delivered to RNI their written denials of access.

■ We begin with the evidence of the denial of access to install the water meters. We will not disturb the trial court's findings if there is any evidence to support them. *Illingworth v. Bushong*, 297 Or 675, 694, 688 P2d 379 (1984). RNI argues, as it did below, that defendants actually did not deny *access*; rather, they merely complained about the installation of the meters to charge them for water and sewer service. That is, indeed, what defendants said; at least, that is how the trial court reasonably could have construed their testimony. We conclude that there is evidence to support the trial court's decision as to the installation of the water meters.

■ We turn to the evidence of the denial of access to read the meters. Again, we examine the record for any evidence to support the trial court's findings. *Id.* The evidence is uncontradicted that, at least by September 1, 1998, defendants had provided written notice to RNI of their denial of access to their premises. There is, however, no such uncontradicted evidence that RNI entered their property to read the meters after receipt of the notice. Defendants point to the testimony

of Rau that he received water bills every month following the installation of the meters. His actual testimony, however, was somewhat more equivocal. He stated, "I'm not going to state that I've received one each month." Moreover, it does not necessarily follow that, simply because bills were sent, they were based on meter readings. It is not unreasonable to infer that, after the notice of denial access, such bills could have been based on average prior usage. In any event, it is not clear from the testimony that EBS continued to bill for water service after RNI decided simply to raise the rent in lieu of requiring the tenants to pay for their own water service. Finally, there is the matter of credibility. Generally, the trier of fact is the exclusive judge of the credibility of witnesses. *Bend Tarp and Liner, Inc. v. Bundy*, 154 Or App 372, 378 n 4, 961 P2d 857 (1998). In light of the foregoing, we cannot say that the trial court was completely without a basis for rejecting defendants' claims of abuse of access. We therefore conclude that the trial court did not err in dismissing Counts 2 and 3 of defendants' RLTA counterclaim.

Defendants advance other assignments of error, but we reject them without discussion.

Affirmed.