Argued and submitted November 6, 2002, at Lewis & Clark School of Law, affirmed
May 15, petition for review denied August 26, 2003 (335 Or 656)

## STONEBROOK HILLSBORO; L.L.C.,
### dba Stonebrook Suites-Hillsboro,
*Respondent,*

*v.*

## Harry FLAVEL
### and Mary Flavel,
*Appellants.*

### C002304EV; A111874

69 P3d 807

Frank Wall argued the cause and filed the brief for appellants.

Mark L. Busch argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Armstrong and Kistler, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

In this statutory forcible entry and detainer (FED) proceeding, the trial court entered judgment for plaintiff Stonebrook Suites-Hillsboro, awarding plaintiff the premises and denying defendants' counterclaims. Defendants appeal, raising numerous assignments of error. We reject all of the assignments and write only to address defendants' contention that plaintiff failed to give proper notice of its intention to terminate the tenancy. Because we conclude that plaintiff gave sufficient notice, we affirm.

Defendants, Harry and Mary Flavel, who are brother and sister, shared adjoining rooms in plaintiff's hotel for a period exceeding 30 days, after which time, by operation of law, they became tenants entitled to the protections of the Oregon Residential Landlord Tenant Act (ORLTA). ORS 90.100(38)(c) (1999).[1] Because there was no written rental agreement, the tenancy was considered to be month to month. ORS 90.240(5)(b).[2] Plaintiff's manager testified that, shortly after they became tenants, defendants stopped paying rent, and plaintiff sought to terminate the tenancy. It is undisputed that defendants received both a 72-hour nonpayment notice, ORS 90.400(2)(b), and a 30-day "no cause" notice, ORS 90.427(2), terminating their tenancy. Because defendants refused to leave the premises after receiving notice of plaintiff's intention to terminate the tenancy, plaintiff sought to evict defendants pursuant to ORS 105.115(2), which provides for an action to recover the premises when the tenant refuses to leave after a valid notice. Defendants sought to dismiss the proceeding, contending that they had not been properly notified of plaintiff's intention to terminate the tenancy.

It is undisputed that ORS 90.155(1) provides the methods for giving notice of an intention to terminate a tenancy. ORS 105.120(2). ORS 90.155 provides, as relevant:

---

[1] The events giving rise to this proceeding took place when the 1999 version of the statute was in effect. The statute has since been renumbered to ORS 90.100(41)(c).

[2] ORS 90.240(5)(b) provides that, if a rental agreement does not fix the term of the tenancy, it "shall be a month-to-month tenancy."

"(1)  * * * [W]here this chapter requires written notice, service or delivery of that written notice shall be executed by one or more of the following methods:

"(a)   Personal delivery to the landlord or tenant;

"(b)   First class mail to the landlord or tenant; or

"(c)   If a written rental agreement so provides, both first class mail and attachment to a designated location. In order for a written rental agreement to provide for mail and attachment service of written notices from the landlord to the tenant, the agreement must also provide for such service of written notices from the tenant to the landlord. Mail and attachment service of written notices shall be executed as follows:

"(A)   For written notices from the landlord to the tenant, the first class mail notice copy shall be addressed to the tenant at the premises and the second notice copy shall be attached in a secure manner to the main entrance to that portion of the premises of which the tenant has possession; and

"(B)   For written notices from the tenant to the landlord, the first class mail notice copy shall be addressed to the landlord at an address as designated in the written rental agreement and the second notice copy shall be attached in a secure manner to the landlord's designated location, which shall be described with particularity in the written rental agreement, reasonably located in relation to the tenant and available at all hours.

"(2)   If a notice is served by mail, the minimum period for compliance or termination of tenancy, as appropriate, shall be extended by three days, and the notice shall include the extension in the period provided.

"(3)   A landlord or tenant may utilize alternative methods of notifying the other so long as the alternative method is in addition to one of the service methods described in subsection (1) of this section."

Plaintiff's witnesses testified that plaintiff's employees twice attempted to hand-deliver termination notices to defendants but that on each occasion defendants refused to accept the notices. On the first occasion, plaintiff's front officer manager, Kate, attempted to hand-deliver a notice to Ms. Flavel

when she came to the front desk to have her room key cards reprogrammed; Ms. Flavel walked away, refusing to accept it. Kate testified that she followed Ms. Flavel out to the parking lot and attempted to hand a notice and another key card to Mr. Flavel, who was waiting in defendants' car. Ms. Flavel waved her brother away; as Kate knocked on the car window, Mr. Flavel backed away quickly and drove off. Another witness testified that, on a second occasion, he attempted to hand-deliver notices to defendants as they walked from their rooms to their car but that defendants got into their car and nearly ran into him as they drove from the hotel parking lot.

Plaintiff's witnesses testified that, after defendants refused to accept hand delivery of the notices, plaintiff made the delivery attempt at issue here. Plaintiff's manager testified that, at a time when she reasonably believed that defendants were in their rooms because their car was in its parking space, she slipped termination notices under defendants' doors and knocked on the doors. She testified that she had no personal contact with defendants at that time.

██ Defendants admitted that they received the notices placed under their doors but denied that plaintiff's employees had ever attempted to hand-deliver termination notices or that they had ever refused personal delivery. They moved for a directed verdict, asserting that plaintiff had failed to establish personal delivery of the notices. The trial court denied the motion and made these findings:

> "There is no doubt, based on the evidence which has been received in this court, that the defendants were present inside that hotel and were avoiding all attempts to be served personally, and no doubt that they were given the notice, no doubt that they got the notice, no doubt that they were aware of exactly what was going on in this particular case."

At the conclusion of trial, the court awarded restitution to plaintiff. In addition, the court found:

> "As regards the credibility issues in this case, I resolve those credibility issues in favor of plaintiff. Rarely as a judge have I found a tenant who was more sophisticated than Ms. Flavel is regarding the nuances of landlord-tenant law. Rarely have I found a defendant less credible than

Ms. Flavel. She got on the stand and perjured herself in my courtroom. I find that deeply offensive and find that she and her husband—or excuse me, her brother, Mr. Flavel, have no credibility. Everything they testified to in my opinion carries no weight because I simply do not believe a word that they said."

Generally, the factfinder is the exclusive judge of the credibility of witnesses, *Bend Tarp and Liner, Inc. v. Bundy*, 154 Or App 372, 378 n 4, 961 P2d 857, *rev den*, 327 Or 484 (1998), and we will not disturb the trial court's findings if there is any evidence to support them, *Illingworth v. Bushong*, 297 Or 675, 694, 688 P2d 379 (1984). In addition to the trial court's express finding that defendants were in their rooms when the notices were slipped under their doors, the trial court resolved all credibility disputes in favor of plaintiff, implicitly accepting plaintiff's version of the disputed facts concerning its attempts to hand-deliver the notices. For the purpose of evaluating the sufficiency of plaintiff's notice, the findings of the trial court that we consider to be relevant are that defendants were in their rooms when the notices were slipped under their doors and that on two prior occasions defendants had refused to accept hand delivery of the notices.

In defendants' view, ORS 90.155(1)(a) requires face-to-face delivery, which they claim cannot be accomplished by slipping a notice under the door. Defendants assert that, having failed to personally deliver the notices, plaintiff could have attempted mail delivery. Or, if it had had the foresight to provide a written rental agreement, plaintiff could have provided for a reasonable alternative method of giving notice, as contemplated by ORS 90.155(1)(c) and (3). Plaintiff contends that the under-the-door delivery was "personal" enough in this case because, as the trial court found, defendants were in their rooms. In the alternative, plaintiff asserts that, in light of the two previous attempts to hand-deliver the notices and defendants' purposeful avoidance of delivery, defendants are not in a position to insist that they were entitled to face-to-face delivery of the notice. Citing ORS 90.130, plaintiff asserts that the protections set forth in the ORLTA are premised on the parties acting in good faith in carrying

out or *enforcing* obligations under the statutes. That section provides:

"Every duty under this chapter and every act which must be performed as a condition precedent to the exercise of a right or remedy under this chapter imposes an obligation of good faith *in its performance or enforcement*."

(Emphasis added.) Plaintiff contends that defendants should not be rewarded for conduct intended to thwart its attempts to carry out its obligation to provide the statutorily required notices of termination.

As we and the Supreme Court have held, as a prerequisite to asserting the rights and remedies under the ORLTA, a party must act in good faith. *Napolski v. Champney*, 295 Or 408, 419, 667 P2d 1013 (1983); *Amatisto v. Paz*, 82 Or App 341, 346, 728 P2d 42 (1986); *see Ellsworth v. Gladden*, 36 Or App 385, 389, 584 P2d 774, *rev den*, 284 Or 521 (1978) (in the absence of evidence of tenant acting in bad faith, tenant entitled to enforce provision requiring landlord to provide an accounting of a security deposit). We conclude that, in light of defendants' acknowledgment that they received the notices and the trial court's findings that defendants were in their rooms at the time the notices were slipped under the doors and were deliberately avoiding personal service, they cannot now be heard to complain that they were entitled to face-to-face delivery or some other form of delivery of notice. The trial court implicitly found that defendants did not act in good faith regarding plaintiff's effort to fulfill its obligation to give them written notice of its intention to terminate their tenancy. They therefore are not in a position to enforce the statutory requirement for personal delivery of the notice. We accordingly affirm the trial court's holding that defendants received adequate notice of the termination of their tenancy.

Affirmed.